LOCAL 1303 AND LOCAL 1378 OF COUNCIL NO. 4, AFSCME, AFL-CIO, ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

CITY OF NEW LONDON *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(9418)
(9419)

PETERS, PARSKEY, SHEA, GRILLO and COVELLO, Js.

Argued April 6—decision released August 16, 1983

⬛

*Marianne D. Smith,* commission counsel, with whom were *Mitchell W. Pearlman,* general counsel, and, on the brief, *Albert P. Lenge,* assistant general counsel, for the appellant-appellee (named defendant in each case).

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellees-appellants (plaintiffs in the first case).

COVELLO, J. These appeals emanate from a decision of the freedom of information commission. On September 3, 1976, freedom of information commissioner Herbert Brucker conducted a hearing on the complaint of one Robert Fromer that the city of New London had denied him access to the records of sick leave taken by New London municipal employees. Commissioner Brucker thereafter made certain findings and conclusions and recommended to the full commission that the requested information be made available to the complainant. On October 26, 1976, with Commissioner Brucker seated as a commission member, the full commission voted to accept his report by a vote of two to one and entered an order directing the city of New London to supply the requested information.

The plaintiff unions joined by two employees appealed this decision to the Superior Court. A separate appeal, thereafter consolidated with the first one, was filed by the city of New London.

On October 25, 1978, the court, *Spallone, J.,* rendered its judgment on the two administrative appeals wherein it concluded that the release of the sick day information, including the name of the employees would consti-

tute an invasion of the employees' right to privacy. The court, therefore, modified the original commission order, directed the release of the requested information but ordered that the employees be identified only by random numbers to be assigned by the city.

This court granted a petition for certification whereupon the freedom of information commission appealed the court's modification of the earlier commission order. The plaintiff unions, the two municipal employees and the city of New London cross appealed. Robert Fromer, the original complainant, did not appeal. We conclude that the freedom of information commission is not an aggrieved party here and is thus ineligible to pursue this appeal.

"It is settled law that the right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met. *Zachs* v. *Public Utilities Commission,* 171 Conn. 387, 394, 370 A.2d 984 [1976]; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 293, 320 A.2d 797 [1973]." *In re Juvenile Appeal (Anonymous),* 181 Conn. 292, 293, 435 A.2d 345 (1980).

In the case of administrative decisions appealed to Superior Court, further review is available only to one qualifying as an "aggrieved party."[1] This requirement (part of the Uniform Administrative Procedure Act)[2] is compatible with traditional notions of appellate practice for it is fundamental that "[a] requisite element of appealability is that the party claiming

---

[1] General Statutes § 4-184 provides: "APPEAL FROM FINAL JUDGMENT OF SUPERIOR COURT. An *aggrieved party* may obtain a review of any final judgment of the superior court under this chapter. The appeal shall be taken in accordance with section 51-197b." (Emphasis added.)

[2] General Statutes §§ 4-166 through 4-189.

error in the decision of the trial court be aggrieved; General Statutes § 52-263; Practice Book, 1978, § 3000; *Rollins* v. *Holcomb,* 122 Conn. 664, 666, 190 A. 260 (1937); Maltbie, Conn. App. Proc. §§ 6-7; for 'if a party attempting to appeal can by no possibility suffer injury by the judgment, he should not be permitted to appeal.' *Waterbury Trust Co.* v. *Porter,* [130 Conn. 494, 498, 35 A.2d 837 (1944)]." *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979). In the present instance, the freedom of information commission is arguably not a "party" and certainly not "aggrieved."

"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 [1974]." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978).

The commission here had no intrinsic interest in the present dispute over municipal employee sick leave records and conceded this to be the case. On December 29, 1976, in moving to join additional appellees in the matter then pending in Superior Court, the commission stated that "[t]he Freedom of Information Commission has no interest in such access for itself. . . . No legal right, duty, or privilege of the Freedom of Information Commission is at issue in this judicial review of its final decision."

Since the commission concedes that "no legal right, duty or privilege" of the commission is involved in this review, we are unable to find that "a specific personal and legal interest has been specially and injuriously affected by the [court's] decision." We therefore conclude that the defendant commission is not "aggrieved" within the meaning of the statute.

"Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 509, 242 A.2d 705 [1968]." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 493. The appeal is therefore dismissed.

The cross appeals place in issue the propriety of Commissioner Brucker's having sat and voted as a commission member on the final order entered against the city when he had conducted the initial contested hearing on the issue, made findings, and recommended entry of the order against the city which was eventually adopted by a two to one vote of the full commission. We conclude that the commissioner was not disqualified and find no error.

The commissioner's conduct conformed to regulations adopted by the freedom of information commission which authorized the commission to designate a commission member to act as a hearing officer in a contested case.[3] The regulations further called for a

---

[3] "[Regs., Conn. State Agencies] Sec. 1-21j-7. HEARING OFFICERS. The commission may designate a member of the commission or any other person authorized by statute to be a hearing officer for the purpose of conducting any contested case it shall hear under chapter 54 of the general statutes and for the purpose of presiding at any investigation it shall conduct under the authority of Section 15 (d) of public act 75-342.

"(a) The hearing officer shall be designated in behalf of the commission by the chairman of the commission or by any other commissioner acting in the commission's behalf. Such designation shall be limited to the particu-

proposed decision to be served on all parties with an opportunity to file exceptions, present briefs and make oral argument prior to any final vote on the matter.[4]

lar contested case or investigation for which the appointment is made and for the purpose of no other matter or business before the commission.

"(b) By such designation the hearing officer shall be empowered to exercise in behalf of the commission all of the authority to conduct a hearing or investigation delegated to the commission under Section 15 (d) of public act 75-342 within the limits hereinafter set forth.

"(1) The hearing officer shall convene and conduct all public hearings required by law within the scope of the commission's designation. No testimony or argument shall become a part of the record or form a basis for any finding of the hearing officer unless the hearing officer is present in the place where the hearing is being conducted and personally hears or receives the testimony and argument there offered.

"(2) The hearing officer may, as he deems appropriate in his sole discretion, designate a member of the staff of the office of the secretary of the state to provide technical assistance in the hearing officer's conduct of the hearing and in the preparation of the hearing officer's report to the commission. The person designated to provide such technical assistance shall perform no function beyond assisting the hearing officer to conform the proceedings and hearing officer's report to the requirements of the uniform act, Chapter 54 of the General Statutes. Nor shall the designation of any person to provide such technical assistance to the hearing officer in any way diminish the authority of the hearing officer in the conduct of the hearing or in the preparation of the report to the Commission.

"(3) The hearing officer shall administer oaths, examine witnesses, receive oral and written evidence, rule on the admissibility of evidence, rule on the order in which the hearing is conducted and on all other aspects of its conduct in behalf of the commission. Upon conclusion of the hearing, the hearing officer shall report to the commission the hearing officer's recommended conclusions of fact and law.

"(4) In the event the hearing officer finds it necessary to subpoena witnesses to compel their attendance or the production of any evidence for examination, any commissioner is authorized to order in behalf of the commission the issuance of such subpoena as is required for the purposes of the investigation. In the case of failure to comply with the subpoena or to testify with respect to any matter before the hearing, the commissioner ordering the subpoena shall report to the chairman of the commission the need to seek enforcement of the commission's authority under Section 15 (d) of P.A. 75-342. Upon the concurrence of either the chairman or of any other commissioner, the commissioner ordering the subpoena in the commission's behalf shall be empowered to take such actions to enforce the subpoena as may be provided by law."

[4] "[Regs., Conn. State Agencies] Sec. 1-21j-38. PROPOSAL FOR DECISION IN A CONTESTED CASE. a. The commission will proceed in the following man-

This latter regulation conforms with General Statutes § 4-179 which authorizes such a procedure.[5]

When a challenged administrative procedure comports with an administrative regulation, and that regulation comports with an act of the legislature, the scope of our review is limited. We have no independent mandate to find public policy in an area in which the legislature has definitively spoken. "Primarily, it is for the legislature, which is the arbiter of public policy, to determine what it shall be. *Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A.2d 702 [1947]; *State* v. *Gilletto,* 98 Conn. 702, 714, 120 A. 567 [1923]. And a constitutional statute can never, by judicial decree, be declared to be against such policy." *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 132, 55 A.2d 732 (1947); *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.,* 182 Conn. 437, 442, 438 A.2d 705 (1980); *State* v. *Clemente,* 166 Conn. 501, 546, 353 A.2d 723 (1974).

ner in contested cases where a majority of the commission has not heard the case or read the record. If the decision is to be adverse to a complainant, applicant, petitioner or any other party, the decision shall not be adopted by the commission until a proposal for decision is served upon all of the parties, and until an opportunity has been afforded to each party adversely affected by the proposed decision to file exceptions, to present briefs, and to make oral argument before the commission.

"b. In the proposal for decision to be served upon the parties, the commission will set forth its summary of each issue of fact or law that it finds necessary to reach the conclusion contained in the proposed decision.

"c. Compliance with the above-stated requirement concerning the proposal for decision may be waived by a written stipulation of the parties."

[5] General Statutes § 4-179 provides: "PROPOSAL FOR DECISION. PROCEDURE. WAIVER. When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefore and of each issue of fact or law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section."

Because the regulations in this case were not inherently unlawful, and because § 4-179 is not unconstitutional, the plaintiffs cannot succeed in their argument that it was improper for Commissioner Brucker to vote as a member of the commission. In administrative law, a combination of investigative and adjudicative functions does not per se constitute a denial of due process. *Withrow* v. *Larkin,* 421 U.S. 35, 47–55, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); see 3 Davis, Administrative Law (2d Ed. 1980) § 19:4.

We have reviewed the other claims in the cross appeal. In the circumstances of this case, and in light of our adjudication of the appeal itself, we find none of them persuasive. We therefore conclude that there is no error on the cross appeals.

The appeals of the defendant freedom of information commission are dismissed. There is no error on the plaintiffs' cross appeals.

In this opinion the other judges concurred.