## Zoning Board of Appeals of the Town of North Haven v. Freedom of Information Commission et al.
### (12518)

Peters, C. J., Shea, Santaniello, Callahan and Ment, Js.

Argued November 12, 1985—decision released February 4, 1986

*Mitchell W. Pearlman,* general counsel, with whom, on the brief, were *Constance L. Chambers,* assistant general counsel, and *David N. Rubin,* for the appellant (named defendant).

*Robert K. Ciulla,* for the appellee (plaintiff).

SHEA, J. This appeal arises out of a Superior Court action reversing a decision of the Freedom of Information Commission (FOIC) which held that an executive session held by the zoning board of appeals of the town of North Haven (ZBA) was improper under General Statutes § 1-18a (e).[1] On May 13, 1982, the ZBA, prior to a public session, voted unanimously to enter executive session with its attorney to obtain legal advice relating to a pending use variance request to permit the construction of a condominium complex. Following the executive session, the ZBA returned to public session and approved the variance request.

On June 4, 1982, Louise Kosciuszek, who had opposed the variance, filed a notice of appeal with the FOIC, pursuant to General Statutes § 1-21i (b),[2] claim-

---

[1] General Statutes § 1-18a (e) provides: "(e) 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting; (2) strategy and negotiations with respect to pending claims and litigation to which the public agency or a member thereof, because of his conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (3) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (4) discussion of the selection of a site or the lease, sale or purchase of real estate by a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would cause a likelihood of increased price until such time as all of the property has been acquired or all proceedings or transactions concerning same have been terminated or abandoned; and (5) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-19."

[2] General Statutes § 1-21i (b) provides: "(b) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unno-

ing that the ZBA violated the law by going into executive session with its attorney. Following a hearing on September 23, 1982, the FOIC issued its decision on November 23, 1982. It found that the executive session was improper under General Statutes § 1-18a (e) (5) and that the discussion conducted therein was not protected from disclosure by either the common law attorney-client privilege or General Statutes § 1-19 (b) (10),[3] "because it [did] not involve confidential communications." It declined to reverse the decision of the ZBA, but ordered that the ZBA "henceforth comply with the requirements of [General Statutes] § 1-21 and § 1-18a (e) (5)."

The ZBA appealed this decision to the Superior Court which, in reversing the FOIC, concluded that the ZBA was an aggrieved party within the meaning of General Statutes § 1-21i (d) and that the conversations between the ZBA and its counsel in executive session were confidential communications protected from disclosure under the attorney-client privilege. The trial court also concluded that the time limits for FOIC action set forth

---

ticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the denial from which such appeal is taken. Upon receipt of such notice, the commission shall serve upon all parties, by certified or registered mail, a copy of such notice together with any other notice or order of such commission. Said commission shall, within twenty days after receipt of the notice of appeal, hear such appeal after due notice to the parties and shall decide the appeal within thirty days after such hearing, by confirming the action of the agency or ordering the agency to comply forthwith with such relief as the commission, in its sound discretion, believes appropriate to rectify the denial of any right conferred by said sections."

[3] General Statutes § 1-19 (b) (10) provides: "(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (10) records, tax returns, reports and statements exempted by federal law or state statutes or communications privileged by the attorney-client relationship . . . ."

in General Statutes § 1-21i (b), which the FOIC had failed to meet, were mandatory rather than directory. From this judgment, the FOIC has appealed, claiming that the court erred: (1) in concluding that the oral communications between the ZBA and its attorney were privileged so as to justify an executive session; (2) in holding that the FOIC has no statutory authority to issue orders that command future compliance with the law; and (3) in declaring the applicable time limits to be mandatory.[4] Because we have concluded that the time requirements are indeed mandatory, we do not reach the other issues.

I

Before addressing the dispositive issue in this appeal, we must first decide whether this court has jurisdiction to entertain the appeal. As we have noted, the FOIC did not reverse the decision of the ZBA. Instead, the FOIC ordered that the ZBA "henceforth comply" with the applicable statutes. General Statutes § 1-21i establishes a right of appeal for any party aggrieved by a decision of the FOIC under the Freedom of Information Act (the act). Therefore, a showing of aggrievement is necessary to establish the Superior Court's jurisdiction over the appeal of the ZBA. *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979). The trial court concluded that the ZBA was aggrieved by the FOIC finding that the executive session was improper and by the "threat of criminal sanctions" implicit in the order.[5] We agree.

---

[4] In a separate action instituted by the complainant, the decision of the ZBA granting the use variance was reversed by the Superior Court, *Celotto, J.,* on June 20, 1983. The complainant did not appear in the appeal to the Superior Court in the case before us and was ultimately defaulted.

[5] Our inquiry is focused on the Superior Court's jurisdiction because General Statutes § 1-21i (d) grants the FOIC standing to appeal any decision "overturning or modifying" its decision.

" 'The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." . . . (Citations omitted.) *Local 1303 & Local 1378* v. *FOIC,* 191 Conn. 173, 176, 463 A.2d 613 (1983).' " *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Walls* v. *Planning & Zoning Commission,* 176 Conn. 475, 477–78, 408 A.2d 252 (1979).

There can be no question that the interest of the ZBA in obtaining confidential legal advice from its counsel satisfies the personal and legal interest in the subject matter requirement. Nor can it successfully be maintained that its interest has not been "injuriously affected." The FOIC concluded that the executive session was improper under the act because any attorney-client communications were not confidential, and it ordered the ZBA henceforth to comply with the requirements of the law. General Statutes § 1-21k (b) provides that the failure to comply with an order of the FOIC constitutes a class B misdemeanor. Further, if the order had not been vacated by the Superior Court, it would undoubtedly have had a chilling effect on the ZBA the next time it contemplated calling an executive session in order to secure legal advice. The ZBA was aggrieved by the action of the FOIC because the order not only required the ZBA to conform with the requirements of the law, but, considered in tandem with the decision that an executive session to obtain legal advice was improper, also prohibited such executive sessions in the

future. Although the FOIC order did not explicitly subject the ZBA to a penalty or overturn its decision, the ZBA was aggrieved.

## II

The FOIC concedes, as it must, that it did not comply with the requirements of General Statutes § 1-21i (b) that it "*shall,* within twenty days after receipt of the notice of appeal, hear such appeal . . . and *shall* decide the appeal within thirty days after such hearing . . . ." (Emphasis added.) The hearing was not held until September 23, 1982, more than three and one-half months after the filing of the appeal on June 4, 1982. The FOIC decision was not issued until November 17, 1982, nearly two months after the hearing. In attempting to nullify these admitted violations of the statute, the FOIC argues that the time limits are not mandatory, but merely directory, so that its failure to comply does not invalidate its action. We disagree.

" 'For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory.' 2A Sutherland, Statutory Construction (4th Ed. Sands) § 57.19. Unless there is reason to believe that the legislature intended that the duty not be performed at all except within the time prescribed or that the time restriction should be considered a limitation upon the power of the tardy officer, failure to act within the time specified should not invalidate the action taken. Id. 'It is of course difficult to lay down a general rule to determine in all cases when the provisions of a statute are merely directory and when mandatory or imperative, but, of all the rules mentioned, the test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other

words, whether it relates to matter material or immaterial—to matters of convenience or of substance.' *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334 (1890)." *Tramontano* v. *Dilieto,* 192 Conn. 426, 432, 472 A.2d 768 (1984); see *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 587, 418 A.2d 939 (1979); *State* v. *Tedesco,* 175 Conn. 279, 284–85, 397 A.2d 1352 (1978); *Akin* v. *Norwalk,* 163 Conn. 68, 74, 301 A.2d 258 (1972); *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 554, 235 A.2d 643 (1967).

Under this analysis, the FOIC argues that the time periods prescribed in § 1-21i (b) are directory because they are "clearly designed for the convenience of persons seeking redress before the FOIC and to expedite such matters." We disagree with this contention and also with the analysis of many unreported Superior Court decisions cited by the FOIC that have held that the time requirements are merely directory. These cases have concluded that to dismiss a complaint due to the failure of the FOIC to comply with the time requirements would operate to penalize the complainant[6] and frustrate the essential purpose of the act, which is to facilitate public access to government activities. We agree with the interpretation of the court below that the act reflects a legislative purpose to balance the public's right to access with the government's need for confidentiality. *Wilson* v. *Freedom of Infor-*

---

[6] This is not an instance where *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), requires us to interpret the time requirements as directory. In *Logan,* the complainant was prevented from asserting a claim of unlawful termination with the employment commission because the commission had failed to comply with a 120 day convening requirement. The United States Supreme Court held that the employee's right to use the adjudicatory procedures of the fair employment act was a property right protected by the due process clause that could not be abrogated by the commission's failure promptly to hear the complaint. The complainant here was not deprived of her due process rights. She did not assert a vital liberty or property interest, she merely sought to reverse the decision of the ZBA.

*mation Commission,* 181 Conn. 324, 328, 435 A.2d 353 (1980). The time requirements were not designed as merely a convenience to complainants under the act. The speedy disposition of complaints is important both to the complainant and to the efficient functioning of the governmental agency involved. Because the time requirements embodied in General Statutes 1-21i (b) advance this purpose, they go to the essence of the act and are, therefore, mandatory.

The statute expressly provides that the commission "shall" hold a hearing within twenty days and "shall" decide the appeal within thirty days thereafter. This language, considered in conjunction with the use of the word "may" in other sentences of the same statutory section, supports the conclusion that the legislature acted with complete awareness of their different meanings. *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978). The legislative history similarly buttresses the analysis that the time requirements were intended to be mandatory.[7] If the FOIC finds that it is handicapped by these mandatory time requirements, its appropriate remedy is to request the legislature either to lengthen the applicable time periods or to provide for an extension procedure. The FOIC cannot disregard the time limits in the act by viewing them as merely directory.

We are persuaded that the legislature intended that the failure of the FOIC to comply with the time limits for the hearing and adjudication of a complaint would nullify its subsequent action. Although the use of the word "shall" does not invariably create a mandatory

---

[7] Representative Martin B. Burke, who sponsored the bill, commented on the floor of the house: "The appeal is a speedy process. The Freedom of Information Commission must hear it within 20 days of the filing of the appeal and they must decide it within 15 days after the hearing. And I would submit that this administrative commission would be a lot quicker than if there were an appeal to a court." 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3914.

duty, because statutes must be construed as a whole to ascertain the legislative intention; *Tramontano* v. *Dilieto*, supra, 433–34; we conclude that the legislature intended the time requirements for FOIC action to be mandatory.

There is no error.

In this opinion the other judges concurred.