# CITY OF MILFORD *v.* LOCAL 1566, COUNCIL 4, AFSCME ET AL.
## (11918)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 13—decision released June 3, 1986

*Michael J. Lombardo,* assistant attorney general, with whom were, on the brief, *Joseph I. Lieberman,* attorney general, and, on the brief on the cross appeal, *Robert E. Walsh, Charles H. Overend* and *Brian J. Comerford,* assistant attorneys general, for the appellant-appellee (state board of mediation and arbitration).

*Bruce L. Levin,* with whom were *Julia B. Geib,* law student intern, and, on the brief, *George F. Martelon, Jr.,* for the appellee-appellant (plaintiff).

SANTANIELLO, J. The principal issue raised on these appeals is whether members of the state board of mediation and arbitration must take an oath pursuant to General Statutes § 52-414 (d)[1] before arbitrating every dispute. The appeals arise out of an employment dispute between Frank Redin, represented by Local 1506, Council 4, of the American Federation of State, County and Municipal Employees, AFL-CIO (the union), and the plaintiff, the city of Milford. Redin filed a grievance with the union alleging that the plaintiff unfairly discharged him. In accordance with the procedures established in the collective bargaining agreement between the plaintiff and the union, the grievance was submitted to arbitration before the state board of mediation and arbitration (the board). A panel of three board members heard the case and found that Redin had been discharged in violation of his rights under the bargaining agreement. The award provided that Redin be reinstated and that he be compensated for lost wages. The plaintiff thereafter applied to the Superior Court to have the award vacated, arguing, inter alia, that the award was invalid because the arbitrators did not take the oath required by General Statutes § 52-414 (d) before hearing the grievance. The board moved to intervene in order to defend the validity of its arbitration procedures. The court allowed the board to intervene, but agreed with the plaintiff that the award should be vacated on the ground that the arbitrators did not take the oath under the statute. The court then ordered that the case be reheard by another panel of arbitrators.

---

[1] General Statutes § 52-414 (d) provides: "Before hearing any testimony or examining other evidence in the matter, the arbitrators and umpire shall be sworn to hear and examine the matter in controversy faithfully and fairly and to make a just award according to the best of their understanding, unless the oath is waived in writing by the parties to the arbitration agreement."

The board appeals from the trial court's order vacating the award.[2] It argues that the court erred in holding that before the members of the board can arbitrate a dispute, they must take the oath required by § 52-414 (d). The plaintiff responds that the board has no standing to appeal the court's decision and that the court properly vacated the award. The plaintiff also cross appeals, arguing that the court erred in permitting the board to intervene and that the court should not have ordered a rehearing. We find the issues in favor of the board and remand the case for further proceedings.

I

We address first those issues which question the board's interest in this action: whether the court erred in granting the board permission to intervene in the application to vacate the arbitration award and whether the board has standing to appeal the court's decision.

The plaintiff filed its application to vacate the arbitration award on February 2, 1982. In the application it argued that the arbitrators did not take the oath required by General Statutes § 52-414, that the award was contrary to the evidence, and that the award was vague, "against the law" and "contrary to public policy." Redin and the union defended the action and applied for an order confirming the award. On February 25, 1982, the board moved to intervene because its general practice at the time did not require its members to take the oath in question before hearing grievances, and an adverse ruling on the issue would affect all cases heard by the board. In the motion, the board did not specify whether it was moving to intervene as of right or was seeking permissive intervention. See Practice Book §§ 99 and 100. It argued that "[t]he integrity of the Board is being attacked, and the legality of Board proceedings and awards rendered by the Board is being

---

[2] Redin and the union have not joined the board in its appeal.

questioned by the Plaintiff in this action." The court thereafter granted the motion without comment.

The plaintiff claims in its cross appeal that the board has no intrinsic interest in the outcome of the arbitration proceedings, and that, as a result, the trial court should not have permitted intervention. Because the court did not state the theory on which it allowed intervention, the plaintiff argues both that the board has no right to intervene under Practice Book § 99 and that the court abused its discretion in granting permissive intervention. It is unnecessary to consider the board's right to intervene, however, because we find that the court's action was fully supported under the law governing permissive intervention.

"The consideration of permissive intervention involves numerous factors including the timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. See Fed. R. Civ. Proc. 24 (b). A ruling on a motion for permissive intervention would be erroneous only in the rare case where such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion." *Horton* v. *Meskill*, 187 Conn. 187, 197, 445 A.2d 579 (1982); see also *In re Juvenile Appeal (Docket No. 10718)*, 188 Conn. 259, 266, 449 A.2d 165 (1982) (*Shea, J.*, dissenting).

Applying the factors set forth above, we conclude that the trial court did not abuse its discretion in granting the board's request to intervene. The board's intervention, coming two weeks after the city's application, was timely under the circumstances. Intervention before that date would not have been practical. Although the

board does not have an interest in whether the award is ultimately vacated or confirmed, it has a significant interest in protecting the validity of the procedures used to determine the award. To vacate the award on the basis that the arbitrators were not sworn as required by law calls into question the legality of the board's proceedings and, by implication, jeopardizes the validity of almost all of its arbitration decisions. Concerning the factor of delay or prejudice, the city argues that the board's appeal caused a three year delay in the resolution of the grievance. The possibility of an intervenor's appeal is present every time intervention is requested, however, and that possibility should not, standing alone, be grounds for denying permission to intervene. Finally, while it is true that the union and Redin would have been able to argue the board's position concerning the oath, the court could reasonably have assumed that the board was in a better position to defend its own procedures.

The city also contends that even if the board were properly allowed to intervene, the board does not have standing to appeal the court's order vacating the award. The gravamen of the claim is that the board was not "aggrieved" by the trial court's ruling and therefore does not have sufficient interest in the matter to pursue an appeal.

" 'It is settled law that the right to appeal is purely statutory and is allowed only if the conditions fixed by statute are met. *Zachs* v. *Public Utilities Commission,* 171 Conn. 387, 394, 370 A.2d 984 [1976]; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 293, 320 A.2d 797 [1973].' *In re Juvenile Appeal (Anonymous),* 181 Conn. 292, 293, 435 A.2d 345 (1980)." *Local 1303 & Local 1378* v. *FOIC,* 191 Conn. 173, 175, 463 A.2d 613 (1983). General Statutes § 52-423 provides that "[a]n appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from

judgment or decree upon an award, as in ordinary civil actions." In all civil actions a requisite element of appealability is that the party claiming error be "aggrieved" by the decision of the trial court. General Statutes § 52-263; Practice Book § 3000; *Local 1303 & Local 1378* v. *FOIC,* supra, 175–76; *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979).

The plaintiff argues that the board is not aggrieved because it has no personal interest in whether this particular arbitration award is vacated or confirmed. The board responds that its interest springs from the fact that the validity of its procedures are challenged and the court's ruling interferes with the discharge of its statutory responsibilities. The test for determining aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision. *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 502, 503 A.2d 1161 (1986); *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Local 1303 & Local 1378* v. *FOIC,* supra, 176; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978). Mere status as a party or a participant in the proceedings below "does not in and of itself constitute aggrievement for the purposes of appellate review." *Hartford Distributors, Inc.* v. *Liquor Control Commission,* 177 Conn. 616, 620, 419 A.2d 346 (1979).

We have never specifically addressed the issue of whether a state agency is "aggrieved" by a ruling which questions the validity of its administrative procedures. The plaintiff relies on our decision in *Local 1303*

*& Local 1378* v. *FOIC,* supra, where we held that under the governing statutes and the circumstances of the case, the freedom of information commission had no "specific personal or legal interest" in the dispute and, as a result, could not appeal the decision of the Superior Court overturning the commission's decision. *Local 1303 & Local 1378,* is inapposite, however, because the trial court's decision in that case did not challenge the validity of the commission's procedures. Id., 177. Our research reveals that other courts have found that governmental agencies would have standing in similar circumstances where the lower court's ruling impaired the agency's ability to discharge effectively the obligations imposed on it by law. See *Chapman* v. *Federal Power Commission,* 345 U.S. 153, 155–56, 73 S. Ct. 609, 97 L. Ed. 918 (1953); *Coleman* v. *Miller,* 307 U.S. 433, 441–42, 59 S. Ct. 972, 83 L. Ed. 1385 (1939); *United States* v. *Federal Maritime Commission,* 694 F.2d 793, 801–802 (D.C. Cir. 1982); *Koniag, Inc., Village of Uyak* v. *Andrus,* 580 F.2d 601, 605–607 (D.C. Cir.), cert. denied, 439 U.S. 1052, 99 S. Ct. 733, 58 L. Ed. 2d 713 (1978); *Washington Utilities & Transportation Commission* v. *F.C.C.,* 513 F.2d 1142, 1149–51 (9th Cir.), cert. denied sub nom. *National Association of Regulatory Utility Commissioners* v. *F.C.C.,* 423 U.S. 836, 96 S. Ct. 62, 46 L. Ed. 2d 54 (1975); see generally 4 Davis, Administrative Law (2d Ed. 1983) § 24.16. Although the above cases are not controlling; *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 701, 345 A.2d 563 (1974); we find their reasoning to be consistent with our notions of aggrievement and we correspondingly adopt the rule in the circumstances presented by this case.

Under General Statutes §§ 31-91 through 31-100, the board is given the broad responsibility of helping to resolve labor disputes. See *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 620, 370 A.2d

1076 (1976); *Danbury Rubber Co.* v. *Local 402,* 145
Conn. 53, 55, 138 A.2d 783 (1958). Consistent with its
responsibilities, the board is empowered to arbitrate
employee grievances; General Statutes § 31-97; medi-
ate strikes and lockouts; General Statutes § 31-99; sub-
poena witnesses, order the production of documents;
General Statutes § 31-95; and render awards in pro-
ceedings conducted under its authority. General Stat-
utes §§ 31-95, 31-97. The court's ruling in this case
nullifying an award made by members of the board
because they were not sworn pursuant to General Stat-
utes § 52-414 (d) clearly undermines the integrity of the
administrative procedure employed by the board and
calls into question the validity of most of the decisions
it has rendered. The ruling therefore directly interferes
with the discharge of the board's statutory responsi-
bilities and the board, as a result, has sufficient inter-
est in the controversy to confer standing.[3]

## II

The primary issue raised by these appeals is whether
the trial court properly vacated the award on the ground
that the arbitrators did not take the oath contained in
General Statutes § 52-414 (d). The board argues that
its members are sworn upon taking office and that
§ 52-414 does not apply to the board's arbitration of
labor disputes under General Statutes §§ 31-91 through
31-100. The plaintiff responds that the legislature
intended that all arbitrators, regardless of their posi-

[3] The plaintiff also questions the board's interest in the proceedings on
the ground that under General Statutes § 52-410 standing to apply for the
vacation or confirmation of an arbitration award is limited to the "parties"
to the arbitration. See *Paranko* v. *State,* 200 Conn. 51, 509 A.2d 508 (1986).
General Statutes § 52-410, however, does not limit the court's discretion
to permit a third party to intervene in the proceedings and does not limit
an intervenor's standing to appeal the court's decision. Thus, although the
board may not have been able to apply for an order confirming or vacating
an award under the statutes, it could seek intervention and could, if suffi-
ciently aggrieved by the court's order, appeal.

tion on the board, be required to take the § 52-414 (d) oath before hearing a dispute.

The parties have stipulated that the three arbitrators in this case were board members and that they were sworn to uphold the duties of their office upon appointment by the governor. General Statutes § 4-1 provides that "each person appointed or nominated for appointment by the governor, with or without the advice and consent of the general assembly or either house thereof . . . shall be sworn and shall hold office for the term prescribed by law . . . ." Article eleventh, § 1, of the state constitution further provides that "[m]embers of the general assembly, and all officers, executive and judicial, shall, before they enter on their duties of their respective offices, take the following oath or affirmation, to wit: You do solemnly swear (or affirm, as the case may be) that you will support the constitution of the United States, and the constitution of the state of Connecticut, so long as you continue a citizen thereof; and that you will faithfully discharge, according to law, the duties of the office of. . . . to the best of your abilities. So help you God." See also General Statutes § 1-25. The plaintiff does not dispute that the board members are "officers" of the state and are required to take the constitutional oath.

General Statutes § 52-414 was enacted in 1929 as part of legislation designed to make arbitration a workable alternative to judicial settlement of disputes. *Paranko* v. *State,* 200 Conn. 51, 54, 509 A.2d 508 (1986). The statutes, now General Statutes §§ 52-408 through 52-424, provide for arbitration generally and do not specifically refer to the resolution of labor disputes through the state board of mediation and arbitration. *Danbury Rubber Co.* v. *Local 402,* supra, 57. General Statutes § 52-414 (d) states that: "Before hearing any testimony or examining other evidence in the matter, the arbitrators and umpire shall be sworn to

hear and examine the matter in controversy faithfully and fairly and to make a just award according to the best of their understanding, unless the oath is waived in writing by the parties to the arbitration agreement." In nonlabor matters we have held that if the arbitrators failed to take the oath required by § 52-414 (d), the award is invalid and must be vacated. *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 392 A.2d 966 (1978).

Thirty-four years prior to the enactment of our arbitration statutes, "the General Assembly had passed 'An Act Creating a State Board of Mediation and Arbitration.' Public Acts 1895, c. 239. This act provided in general for the submission of grievances and disputes between an employer and his employees to a board of mediation and arbitration." *Danbury Rubber Co.* v. *Local 402,* supra, 55. The act is now embodied in General Statutes §§ 31-91 through 31-100. It "was designed to deal exclusively with employer-employee grievances and disputes." Id., 57.

We start with the familiar assumption that in enacting § 52-414, the legislature was cognizant of existing law, including §§ 31-91 through 31-100, § 4-1, and article eleventh, § 1, of the state constitution. *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *Vartuli* v. *Sotire,* 192 Conn. 353, 362, 472 A.2d 336 (1984). It is presumed, therefore, that the legislature intended General Statutes § 52-414 to be harmonious with the statutes providing for the arbitration of labor disputes and we must, if possible, "construe each to leave room for the meaningful operation of the other." *State* v. *West,* supra. The board claims that the trial court's interpretation of the statutes, requiring board members to take a second oath before hearing disputes, creates an unnecessary procedure clearly not intended by the legislature. The plaintiff contends that the two oath requirements are consistent and that both should be given effect. We find the board's arguments more persuasive.

The labor legislation of 1895, creating a board of mediation and arbitration, was designed to cope with the special problems of employer-employee disputes and "provides a complete procedure up to the making of a decision by the board. Chapter 65 of the Public Acts of 1929, presently General Statutes [§§ 52-408 through 52-424], deals, on the other hand, with the subject of arbitration generally. *Pratt, Read & Co.* v. *United Furniture Workers,* [136 Conn. 205, 206, 70 A.2d 120 (1949)]." *Danbury Rubber Co.* v. *Local 402,* supra, 57. The procedures established under each set of statutes are separate and distinct. See *Marsala* v. *Valve Corporation of America,* 157 Conn. 362, 365, 254 A.2d 469 (1969). The board members are independently authorized under General Statutes §§ 31-91 through 31-100 to arbitrate labor disputes and render awards. It would therefore be contrary to the intent of the legislature to impose the requirements of § 52-414 on the proceedings conducted under the aegis of the board.

Furthermore, it would be anomalous to require board members to take an oath before every proceeding where they have already been sworn upon taking office. See *Berger* v. *Guilford,* 136 Conn. 71, 81–82, 68 A.2d 371 (1949); *State ex rel. Rundbaken* v. *Watrous,* 135 Conn. 638, 647–48, 68 A.2d 289 (1949). As Judge Hull, writing for the Appellate Court in *Stratford* v. *Council 15,* 3 Conn. App. 590, 592, 490 A.2d 1021, cert. denied, 196 Conn. 809, 494 A.2d 905 (1985), has noted, "[s]uch a requirement would be analogous to requiring judges and referees to take an oath prior to hearing every case." If we were to agree with the plaintiff and apply the oath provision of General Statutes § 52-414 (d) to board members, we would in effect render their constitutionally mandated oath redundant. The members' constitutional oath, although broadly worded in terms of "duties," clearly encompasses the obligations recited in § 52-414 to arbitrate all labor dis-

putes "faithfully and fairly." The legislature in passing § 52-414 (d), therefore, only intended that the section apply to those arbitrators not otherwise sworn to arbitrate disputes.

We conclude then that General Statutes § 52-414 does not impose additional oath-taking requirements on board members and that the award rendered by the board members in this case was valid by virtue of their oath taken upon assuming office. The trial court therefore erred in vacating the award on the ground that the § 52-414 oath was not taken. Because the court below did not reach the other questions raised by the plaintiff in its application to vacate the award, the case must be remanded for consideration of those issues.[4]

There is no error in the plaintiff's cross appeal; there is error in the board's appeal, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

[4] Because of our disposition of the board's claim that the court erred in vacating the award, we do not reach the plaintiff's claim on its cross appeal that the court erred in ordering a rehearing.