BOARD OF PARDONS *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(13502)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued March 2—decision released April 11, 1989

*Carl J. Schuman,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *John F. Gill,* assistant attorney general, for the appellant (plaintiff).

*Victor R. Perpetua,* commission counsel, with whom, on the brief, were *Mitchell W. Pearlman,* general counsel, and *Marianne D. Smith,* assistant general counsel, for the appellee (named defendant).

PETERS, C. J. The sole issue in this appeal is whether the Appellate Court erroneously concluded that the plaintiff Board of Pardons (board) lacked standing to contest an order of the defendant Freedom of Information Commission (FOIC). The underlying controversy between the parties is the validity of an FOIC order requiring the board, in the future, to conduct its deliberations in public except under narrowly delimited

circumstances. The FOIC's order resulted from its decision that the Freedom of Information Act did not, as a general matter, exempt prisoner records from public disclosure, and that the board had violated the act by considering such nonexempt materials in executive session. The trial court upheld the board's appeal from the FOIC order.

Without getting to the merits of the controversy, the Appellate Court determined that the trial court lacked jurisdiction to entertain the board's appeal because, in the Appellate Court's view, the board was not aggrieved by the FOIC's prospective order. *Board of Pardons* v. *Freedom of Information Commission,* 14 Conn. App. 380, 383–84, 540 A.2d 1077 (1988). The Appellate Court held that the FOIC's order did not affect a "specific and personal interest" of the board. Id., 384. The board itself was not immediately aggrieved by the FOIC's order because that order was "purely prospective." Id., 383–84. Further, the board itself was not aggrieved by the separate interests of prisoners in the confidentiality of their records. Id., 384. We granted certification to consider this issue of standing; *Board of Pardons* v. *Freedom of Information Commission,* 209 Conn. 803, 548 A.2d 436 (1988); and now reverse.[1]

Only parties "aggrieved by the decision" of the FOIC have standing to take appeals to the Superior Court. General Statutes § 1-21i (d).[2] "Standing is not a tech-

---

[1] The FOIC, in its brief to this court, has taken no position on the issue of the board's aggrievement. The FOIC reminds us that the legislature expressly amended General Statutes § 1-21i (d) in 1984 to enlarge the statutory scope of aggrievement beyond that which this court had held to be warranted in *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 176, 463 A.2d 613 (1983).

[2] General Statutes (Rev. to 1985) § 1-21i (d) provides in relevant part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. The commission shall have standing to defend, prosecute or otherwise participate in any

nical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of [a] direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a 'personal stake in the outcome of the controversy'; *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975); *Baker* v. *Carr,* supra, 204; provides the requisite assurance of 'concrete adverseness' and diligent advocacy.

"As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great . . . [and] need not be primarily economic." *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981); see *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 389, 512 A.2d 152 (1986).

In appeals pursuant to § 1-21i (d), we have translated these general principles into a twofold test for aggrievement that requires a showing of: (1) a specific personal and legal interest in the subject matter of the FOIC decision; and (2) a special and injurious effect on this specific interest. *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 502, 503

appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved."

A.2d 1161 (1986); *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 176, 463 A.2d 613 (1983).

The board maintains that the Appellate Court took too narrow a view of aggrievement in this case. Despite the prospective nature of the FOIC order, the board claims it has standing to appeal because it is aggrieved in two respects: the risk of criminal sanctions and the threat to the integrity of its deliberative processes. We agree with both of these claims.

A genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing. *Maloney* v. *Pac,* supra, 321–22; *Kuser* v. *Orkis,* 169 Conn. 66, 73, 362 A.2d 943 (1975). Because the Freedom of Information Act makes noncompliance with an FOIC order a class B misdemeanor; General Statutes § 1-21k (b);[3] the individual members of the board have a "specific and personal" interest in the validity of such an order. In the future, board members face the risk of injury, in the form of criminal prosecution and sanctions, if they fail to comply with the present FOIC order. Such a risk of prosecution establishes the requisite "specific and personal interest" of the members of the board and of the board itself as their representative. *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 616, 508 A.2d 743 (1986); *Zoning Board of Appeals* v. *Freedom of Information Commission,* supra, 502.

In addition, the board has a legitimate institutional interest in the integrity of its decision-making process. The board has advanced a colorable claim of injury to its own deliberative functions that transcends the inter-

---

[3] General Statutes § 1-21k (b) provides: "Any member of any public agency who fails to comply with an order of the freedom of information commission shall be guilty of a class B misdemeanor and each occurrence of failure to comply with such order shall constitute a separate offense."

ests of individual prisoners in the disclosure of their records. In deciding whether to grant a pardon or to commute a prison sentence, the board "depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior . . . ." *Connecticut Board of Pardons* v. *Dumschat,* 452 U.S. 458, 464, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981). In order to carry out this sensitive mission, the board claims that it needs the opportunity for confidential dialogue about every aspect of a prisoner's record. The board alleges that, as a practical matter, there is a great deal of overlap between the discussion of the records of individual prisoners, which the FOIC has ordered to be held in public, and the discussion of third party information, which even the FOIC has permitted to be conducted in executive session. The bifurcated procedure that the FOIC order mandates therefore gave rise to a colorable claim of injury to a central aspect of the board's functions. As in *Zoning Board of Appeals* v. *Freedom of Information Commission,* supra, the existence of this order "would undoubtedly have . . . a chilling effect on the [board] the next time it contemplated . . . an executive session" in order to decide whether to grant a petition for a pardon.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the merits of the commission's appeal.

In this opinion the other justices concurred.