## DeMilo and Company, Inc. *v.* Department of Transportation et al.

Superior Court     Judicial District of     File No. 0360581S
Hartford-New Britain at Hartford

Memorandum filed August 5, 1993

*Willinger, Shepro, Tower & Bucci,* for the plaintiff.

*Richard Blumenthal,* attorney general, and *Lawrence G. Widem,* assistant attorney general, for the defendants.

MALONEY, J. The plaintiff, DeMilo and Company, Inc., appeals from the decision of the defendant commissioner of transportation (commissioner) determining the amount of relocation assistance to which the plaintiff is entitled under the Uniform Relocation Assistance Act, General Statutes § 8-266 et seq. and the regulations promulgated thereunder. This appeal is authorized by § 8-273-45 of the Regulations of Connecticut State Agencies and General Statutes § 4-183. The court rules in favor of the commissioner.

A preliminary review of the file and record in this case raises a question of the court's jurisdiction, and the commissioner has moved to dismiss. The issue is whether the appeal was timely served on the commissioner. Failure to make timely service is a defect that

would deprive the court of subject matter jurisdiction. *Tarnopol* v. *Connecticut Siting Council,* 212 Conn. 157, 162–63, 561 A.2d 931 (1989).

Prior to the enactment of No. 88-317 of the 1988 Public Acts, § 4-183 required the appeal to be served on the agency "within thirty days after mailing" of the agency's final decision. That timetable applies to this case. The commissioner's decision is dated March 14, 1989, and his letter of transmittal to the plaintiff's attorney bears the same date. The appeal was served on the commissioner and the attorney general on April 14, 1989, which is thirty-one days after March 14. If the decision was mailed on March 14, therefore, service was too late and the court would be deprived of jurisdiction.

The parties and their counsel are unable to locate any evidence of the date the decision was actually placed in the mail. The commissioner argues that the date typed on the decision and the transmittal letter raises the presumption that they were mailed on that date. The only authority he cites for that proposition is *Lynch* v. *Muzio,* 204 Conn. 60, 67 n.7, 526 A.2d 1336 (1987). That case is, however, inapposite. There, as here, the date of the decision was known, as was the date of receipt by the plaintiff. Nevertheless, the court noted that "[t]he date on which the suspension notice was mailed is not precisely ascertainable . . . ." Id. The court has been presented with no other authority in support of a presumption that a document was placed in the mail on the same date it was issued or signed. The court concludes, therefore, that it may not so presume.

The court also declines to regard the date shown on the decision and the transmittal letter as evidence of the date those documents were mailed. Those typewritten dates are clearly evidence of when the commissioner signed the documents. In the court's view,

however, the dates are not evidence of when the entirely separate act of placing them in the mail, very likely performed by someone other than the commissioner, occurred. It might be that the date shown on a document could be regarded as evidence of some general time frame during which a document was mailed, particularly if the date of receipt is known. In this case, however, the essential fact in issue is the exact date of mailing. Even if the decision was mailed the day after it was dated, on March 15, the service was in compliance with the statutory timetable. Furthermore, the date the decision was received in the mail by the plaintiff is unknown. Under these circumstances, the date shown on the documents in question is not probative of the date they were mailed.

Since, as the court has found, there is no evidence of the precise date when the final decision was mailed by the agency, the court cannot determine when the statutory time period for service of the appeal commenced. It follows that the court cannot find that the plaintiff failed to serve its appeal within that period. The commissioner's motion to dismiss must, therefore, be denied. This result is consistent with the general rule that the court must indulge every presumption favoring its jurisdiction over the case presently before it. *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 198, 596 A.2d 396 (1991). If there is a moral to this tale, it is that administrative agencies and parties aggrieved by their decisions should keep records that evidence the mailing date of the decision. Questions that later arise concerning the court's jurisdiction could then be more easily resolved.

Certain essential preliminary facts are undisputed and fully set out in the record. The plaintiff owned a parcel of land on East Service Road in Hartford on which it operated a motor vehicle junkyard under a

license granted by the department of motor vehicles. In August, 1985, the state acquired two portions of the plaintiff's property in connection with the expansion of Interstate 91. Located on this property were junked cars that the plaintiff used in its business. The state also acquired portions of adjacent property owned by Mary Barilla and leased to the plaintiff. The plaintiff stored junked cars on the Barilla property also.

In June, 1986, the department of transportation (transportation) informed the plaintiff that it would pay the sum of $58,500 as a relocation allowance for the personalty, the junked cars, located on the portions of the plaintiff's real property that the state had acquired. Transportation's offer did not include any amount for personalty stored on the Barilla property because transportation contended that relocation assistance is not available for personalty located on land not owned by the payee.[1]

Dissatisfied with transportation's offer of relocation assistance, the plaintiff appealed to the relocation advisory assistance appeals board (board). The board is appointed by the commissioner to hear such appeals pursuant to General Statutes § 8-271 and § 8-273-1 of the Regulations of Connecticut State Agencies. A panel, consisting of three members of the board, thereafter held a hearing. The hearing extended over ten sessions from February through April, 1988. The plaintiff appeared, represented by counsel, and presented testimony and evidence, as did transportation. Both the plaintiff and transportation were given the opportunity at the close of the hearing to submit briefs to the panel.

Following the hearing, as required by General Statutes § 4-179 and § 8-273-1 of the regulations, the board's

---

[1] Other property was originally involved in the dispute between the parties, but issues related to it have since been resolved.

panel prepared a proposed decision and forwarded it to the commissioner, with copies to counsel for the plaintiff and transportation. Both parties were given the opportunity to submit briefs to the commissioner regarding the proposed decision, which they did.

The panel's proposed decision set forth findings of fact and conclusions that may be summarized as follows: (1) The plaintiff's personal property that is subject to the relocation allowance consists of 1000 junked cars, which includes cars stored on the Barilla property. (2) These junked cars are "low value, high bulk personal property" within the meaning of § 8-273-15 of the Regulations of Connecticut State Agencies. (3) Section 8-273-15 of the regulations provides for payment of the replacement cost as the maximum relocation allowance for "low value, high bulk personal property . . . ." (4) The replacement cost of the junked cars on the plaintiff's property subject to the allowance is $35 each, so that the total relocation allowance payable to the plaintiff is $35,000. After reviewing the proposed decision and the briefs submitted in response by the parties, the commissioner adopted the panel's proposed decision and issued his final decision that the plaintiff is entitled to $35,000 as its allowance under the Uniform Relocation Assistance Act. It is this final decision that is the subject of the plaintiff's appeal to this court. In its brief, the plaintiff advances four general arguments in support of the appeal. The court will address each one separately.

The plaintiff contends that it was a denial of its due process rights for the commissioner and the board to act as "prosecutor, judge and jury at all stages of the administrative regulatory procedure." In essence, the plaintiff argues that the procedure for adjudicating claims for relocation allowances is constitutionally defective because the commissioner or the board appointed by him conducts the hearing on a request

for an allowance and then makes the final decision. The plaintiff contends that the commissioner has a conflict of interest in that he or his department must be both an advocate for a lower allowance, for state budgetary reasons, and the adjudicator of an applicant's appeal for a higher allowance.

As indicated, the procedure followed by the commissioner in this case is in accordance with the General Statutes and state regulations. Thus, General Statutes §§ 8-268, 8-271, 8-273, 8-273a and 8-278 provide the statutory scheme under which transportation is obligated to compensate persons who are displaced from their homes or businesses as the result of departmental projects, such as the expansion of Interstate 91 in this case. Transportation has the responsibility of determining the amount of compensation payable. In the event of a dispute, a person dissatisfied with transportation's determination may appeal to the commissioner, and the commissioner must provide a hearing, as was done in this case. Section 8-273-1 of the regulations provides that appeals from transportation's determination of relocation assistance allowances are referred to the board, which is appointed by the commissioner. The regulation provides that the commissioner then makes the final decision after receiving a proposed decision from the board's panel, following the procedure set out in General Statutes § 4-179.

The court has carefully considered the plaintiff's due process claims and conflict of interest arguments and concludes that they may not be sustained. Indisputably, the commissioner and transportation followed the procedure required by the statutes and regulations. The essence of the plaintiff's claim, therefore, is that those statutes and regulations are unconstitutional. The plaintiff, however, offers no authority for this proposition. Furthermore, the court notes that many other administrative agencies follow the same basic procedure—

that is, the agency acts as an investigator and adjudicator in contested cases. See, for example, title 14 of the General Statutes, pertaining to the department of motor vehicles, title 1, pertaining to the freedom of information commission, and title 22a, pertaining to the department of environmental protection. The courts have generally found the procedure to be in accord with constitutional guarantees of due process. See *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 179–80, 463 A.2d 613 (1983).

This is not to say that the procedure has no critics. In 1991 and 1992, for example, proposals were made to the General Assembly to create an office of administrative hearings, independent of other state agencies, which would provide professional administrative law judges to hold hearings and render decisions in contested cases arising in such agencies. In some cases, under this proposal, the agency head would appear as an advocate only and would not render the final decision. See 1991 Seventeenth Annual Report of the Connecticut Law Revision Commission to the General Assembly, February 25, 1992, pp. 31–60. The General Assembly did not enact those proposals, however, and state agencies, including transportation, continue to be governed by the provisions of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., and other consistent statutes such as those under review here.

Finally, with respect to the plaintiff's due process arguments, the court notes the familiar precept that every presumption is to be given in favor of the constitutionality of a statutory scheme. *Zapata* v. *Burns,* 207 Conn. 496, 507, 542 A.2d 700 (1988).

For all of the reasons set forth above, the court holds that the procedure followed by the commissioner in hearing the plaintiff's appeal and issuing his final deci-

sion, in accordance with the statutes and regulations cited above, did not deny the plaintiff due process of law.

The plaintiff launches a barrage of arguments attacking the amount of the allowance ordered by the commissioner and the method he and the board followed in calculating that amount.

The calculation was made in accordance with § 8-273-15 of the regulations, the basic provisions of which are set forth in the summary of the board's findings. The court's review of the record in this case reveals that the board heard and considered abundant evidence submitted by both the plaintiff and transportation concerning the nature and condition of the personal property for which the plaintiff sought the relocation assistance allowance. As indicated in the proposed decision, eighteen witnesses, including the plaintiff's expert, testified, and 118 exhibits were entered into evidence. These included aerial and close-up photographs of the junkyard that clearly show the junked cars and their condition.

The basis of the plaintiff's claims with respect to the amount of the allowance ordered by the commissioner is that the replacement cost formula in the regulations is unfair and that, in any case, the evidence does not support the dollar amount that the commissioner ultimately adopted.

"[V]alidly enacted regulations of an administrative agency carry the force of statutory law." *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . ." Similarly, "[w]ith regard to questions of fact, it

is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 57, 591 A.2d 1231 (1991). "[I]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 601, 590 A.2d 447 (1991). "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* supra, 57–58. Similarly, "it is the well established practice of this court to 'accord great deference to the construction given [a] statute by the agency charged with its enforcement.' . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." (Citations omitted.) *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496–97.

Application of these well established principles to this case leads the court to conclude that the decision of the commissioner and board may not be overturned on the basis of inadequacy of evidence or misinterpretation of the law or regulations.

The plaintiff argues that the board's proposed decision, as submitted to the commissioner, was invalid because only one member, Edward D. Schwartz, the chairman, signed it. The plaintiff cites no authority for this claim but merely observes "[c]ertainly, in a formal document such as this, everyone would expect something more than the mere signature of one board member and there is nothing more."

The plain implication of the plaintiff's claim, if it is made to support a reversal of the commissioner's decision, is that the chairman of the panel falsely stated that the proposed decision was that of the panel acting together. In this regard, the court notes that the conclusion of the proposed decision, entitled "Recommendation," employs the following language: "In view of the foregoing, *the Appeals Board recommends* that DeMilo is entitled to $35,000.00, (1,000 cars @ $35.00 per car) in relocation assistance payments at this time . . . ." (Emphasis added.)

The plaintiff suggests no evidence that indicates that Schwartz misrepresented the findings and conclusions of the panel he chaired. "There is a presumption that a public officer properly performs his duty unless the contrary appears." *Cahill* v. *Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985). Nothing to the contrary appears in this case. The plaintiff's argument on this point is without merit.

The plaintiff points out that the commissioner's decision was filed more than ninety days after the filing of the plaintiff's reply brief. The plaintiff argues that the decision was, therefore, untimely under the provisions of General Statutes § 4-180 and, therefore, void.

The short answer to the plaintiff's argument is that § 4-180 provides its own remedy in the case of an administrative agency that fails to render a timely decision. That remedy is an application to this court for an order to compel the issuance of a decision. The plaintiff did not avail itself of that remedy in this case, and the court concludes that the remedy was waived. *Jutkowitz* v. *Dept. of Health Services,* 220 Conn. 86, 95–96, 596 A.2d 374 (1991). Accordingly, the plaintiff cannot raise the issue in this appeal.

The commissioner's decision is affirmed. The plaintiff's appeal is dismissed.