ETHICS COMMISSION OF THE TOWN OF
GLASTONBURY *v.* FREEDOM OF IN-
FORMATION COMMISSION ET AL.
(SC 18601)

Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

1

Argued December 2, 2010—officially released August 9, 2011

*Morgan P. Rueckert*, for the appellant (plaintiff).

*Mary E. Schwind*, law department director, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

*Frank F. Coulom, Jr.*, and *Jeffrey J. White* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

McLACHLAN, J. The plaintiff, the ethics commission of the town of Glastonbury, appeals[1] from the trial court's judgments dismissing the plaintiff's consolidated appeals from four decisions of the named defendant, the freedom of information commission (commission). In each decision, the commission had ordered the plaintiff to make and to maintain, for a period of three years, audio recordings of the plaintiff's executive sessions, or any other session closed to the public, after finding that the plaintiff had violated the open meetings provision of the Freedom of Information Act (act), General Statutes § 1-200 et seq., by convening in nonpublic sessions to discuss certain matters and further finding that the plaintiff had failed to comply with the commission's orders to amend its minutes to reflect those discussions. The dispositive issue on appeal is whether the commission's orders exceeded its remedial authority under the act. We conclude that they do, and, accordingly, we reverse the trial court's judgments dismissing the plaintiff's appeals.

The record reveals the following undisputed facts and procedural history. Effective August, 2003, the town of Glastonbury (town) adopted a code of ethics and established the plaintiff to investigate complaints of ethics violations. The four orders at issue in the present appeal arose in connection with unrelated meetings conducted by the plaintiff on September 13, 2004, December 13, 2004, January 10, 2005, and February 28, 2005, from which the public was excluded. In the September 13, 2004 meeting, the plaintiff went into executive session[2] for the stated purpose of

---

[1] The plaintiff appealed from the trial court's judgments to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] " 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (A) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual

4

"consider[ing] written citizen communication containing potentially confidential information," specifically, a complaint filed by the defendant town resident Karen Emerick[3] alleging unethical conduct by members of the town council. Because the plaintiff had not yet finalized its procedures for addressing such complaints, it discussed how to respond to Emerick's complaint, but did not address the merits of her allegations. At the three later meetings, the plaintiff met in closed session to consider requests for advisory opinions from various individuals, at which the plaintiff determined that it lacked jurisdiction over the matters. Following each of the four meetings, Emerick, individually, or in combination with the defendant town resident Dana Evans, filed a complaint with the commission alleging that the plaintiff had violated the open meetings provision of the act, General Statutes § 1-225 (a).

Between ten months and one year after each of the challenged meetings, the commission issued final deci-

may require that discussion be held at an open meeting; (B) strategy and negotiations with respect to pending claims or pending litigation to which the public agency or a member thereof, because of the member's conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (C) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (D) discussion of the selection of a site or the lease, sale or purchase of real estate by a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would cause a likelihood of increased price until such time as all of the property has been acquired or all proceedings or transactions concerning same have been terminated or abandoned; and (E) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-210 [setting forth exemptions to public records]." General Statutes § 1-200 (6).

[3] Emerick, a complainant in all four cases before the commission, and Dana Evans, a complainant in three of the four cases, also were named as defendants in each appeal. Emerick and Evans have adopted the brief of the commission as stating their position. For convenience, we refer to Emerick and Evans collectively as the complainants and individually by name.

sions on the complaints. In its August 10, 2005 final decision concerning the September 13, 2004 meeting, the commission concluded that the plaintiff had violated § 1-225 (a) by convening in executive session for an improper purpose and directed the plaintiff to "cause minutes to be filed of the September 13, 2004 executive session." The order specified that "the minutes [shall] disclose what transpired . . . to the same degree as would have been revealed by conducting the session in public." On December 14, 2005, the commission issued final decisions concerning the three closed meetings held between December, 2004, and February, 2005, which in all relevant respects mirrored its final decision and order relating to the September 13, 2004 meeting. The plaintiff did not appeal from those decisions.

After the plaintiff filed amended minutes summarizing its actions at each of the challenged meetings, Emerick individually, or in combination with Evans, filed complaints with the commission alleging that the amended minutes were not in compliance with the commission's orders. The commission first issued its decision with respect to the minutes of the September 13, 2004 meeting, concluding that the plaintiff had not complied with the commission's order because the minutes did not disclose what had transpired to the same degree as would have been revealed by conducting the session in public. With respect to relief, the commission concluded "that it would [not] be fruitful to continue to order the [plaintiff] to comply with its order . . . given the apparent resistance of the majority of [the plaintiff's members] to comply, the passage of time, and the turnover in the [plaintiff's] membership."[4] The commission

[4] In its decisions finding that the amended minutes for the December 13, 2004, January 10, 2005, and February 28, 2005 meetings also did not comply with its orders, the commission acknowledged the validity, "to a certain extent," of the plaintiff's contention that it was difficult to recreate the minutes to the same degree as if the discussions had been conducted in public, but faulted the plaintiff for failing to provide evidence of the steps its members had taken to attempt compliance.

determined, however, that meaningful relief was necessary "to rectify the denial of the public's right to attend the September 13, 2004 meeting in its entirety, and to rectify the denial of the public's right to have the [plaintiff] comply with an order of the [c]ommission to create minutes of executive sessions or other closed meetings of the [plaintiff] . . . ." To provide such relief, the commission issued the following order: "Beginning [ninety] days following the issuance of this final decision, and continuing for a period of three years thereafter, the [plaintiff] shall make and maintain an electronic audio recording of each of its executive sessions, or any other meeting of the [plaintiff] that is closed to the public. All such audio recordings shall be preserved for the entire three year period . . . . The [plaintiff] may withhold from public disclosure each such audio recording unless it is found by the [c]ommission that the session so recorded was held in violation of § 1-225 . . . ." The commission set forth the following procedure under which it would make such a finding: "In the event that a complaint is filed alleging a violation by the [plaintiff] of the open meetings provision of the . . . [a]ct, such recordings shall be made available to the [c]ommission for in camera inspection." In its later decisions addressing the minutes for the three meetings held between December, 2004, and February, 2005, the commission made identical findings and issued identical orders.

The plaintiff appealed from the commission's decisions to the Superior Court, challenging the orders principally on statutory grounds. First, the plaintiff contended that such prospective relief exceeded the commission's remedial authority under General Statutes § 1-206 (b) (2). Second, the plaintiff contended that the orders violated: (1) the legislature's intent to allow the recording of public meetings only, not executive sessions, as reflected in General Statutes §§ 1-225 and

1-226, as well as rejected amendments to the act that would have required the recording of executive sessions; (2) the protection afforded to confidential communications between the plaintiff and its attorney relating to litigation, as reflected in General Statutes § 1-210 (b) (10); and (3) the bar against disclosure of confidential information in complaints and investigations relating to allegations of unethical conduct by public officials under General Statutes §§ 1-82a and 7-148h. Third, the plaintiff contended that the orders would have an undue chilling effect on its ability to engage in the aforementioned confidential communications. Finally, the plaintiff challenged the substantive basis for the commission's orders, claiming that it substantially had complied with the initial orders to amend the minutes and that the subsequent orders were an abuse of discretion.

Pursuant to motions filed by the plaintiff, the trial court stayed the commission's orders pending appeal, and consolidated the appeals for hearing. In its memorandum of decision, the court limited its analysis to the questions of whether the orders had exceeded the commission's remedial authority under the act and whether the legislature had intended to preclude the recording of executive sessions. As to the first question, the court concluded that the commission's authority was not limited to the specific remedies provided in § 1-206 (b) (2), because "the commission has broad authority to fashion individualized remedies as befits the particular appeal that comes before it, as long as the remedy is specifically tailored 'to rectify the denial of any right conferred by the . . . [a]ct.' " The court also concluded that there was no statutory bar to ordering the recording of executive sessions. Accordingly, the trial court dismissed the appeals.[5] This appeal followed.

---

[5] The plaintiff unsuccessfully sought an articulation as to certain overlooked claims, but later obtained limited relief from the Appellate Court,

Although the plaintiff renews all of the claims that it had raised before the trial court, the dispositive issue, in our view, is whether an order prospectively directing the plaintiff to record its executive sessions for the next three years exceeds the commission's remedial authority under the act. We conclude that it does.

"It is well established that an administrative agency possesses no inherent power. Its authority is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function. *Adam* v. *Connecticut Medical Examining Board*, 137 Conn. 535, 537–38, 79 A.2d 350 (1951)." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 155, 788 A.2d 1158 (2002). Indeed, "[a]n administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority. . . . It is a familiar principle that [an administrative agency] which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Citation omitted; internal quotation marks omitted.) Id., 156.

The specific question before us, therefore, is whether the legislative grant of remedial authority to the commission under § 1-206 (b), by its express terms or necessary implication, authorizes the commission to issue the prospective relief ordered in the present case. Because the question is one of statutory construction, we afford plenary review, guided by well established principles regarding legislative intent. See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent).

which directed the trial court to articulate the factual and legal basis for rejecting two of the plaintiff's claims. Neither claim is necessary to our resolution of the present appeal.

We begin with the text of § 1-206 (b) (2), which provides in relevant part: "In any appeal to the . . . [c]ommission under subdivision (1) of this subsection or subsection (c) of this section, the commission may confirm the action of the agency or order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by the . . . [a]ct. The commission may declare null and void any action taken at any meeting which a person was denied the right to attend and may require the production or copying of any public record. In addition, upon the finding that a denial of any right created by the . . . [a]ct was without reasonable grounds . . . the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars. . . ."

In the present case, the commission did not order any of the remedies specified in the second sentence of the statute or impose the penalty specified in the third sentence of the statute. Therefore, this appeal turns on the meaning of the first sentence, authorizing the commission to "order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by the . . . [a]ct." General Statutes § 1-206 (b) (2). In considering this question, we are mindful that "an administrative agency's discretion as to what penalty to impose is not completely unfettered, and the matter of choice of remedies is open to a limited review to the extent of providing safeguards against statutory or constitutional excesses." 2 Am. Jur. 2d 388, Administrative Law § 453 (2004).

In its brief to this court, the plaintiff initially contended that the first sentence simply confers discretion on the commission to choose any of the remedies provided in the second and third sentences, or a combina-

tion thereof. At oral argument, however, the plaintiff modified its position and conceded that the first sentence authorizes the commission to order relief separate and apart from the remedies provided in the other two sentences. The plaintiff nonetheless posited that such relief is limited to that which would rectify a right previously denied to the complainants, such as an order deeming void actions taken at an improperly closed meeting, and does not include prospective relief to remedy a violation of the act that has not yet occurred.

Conversely, the commission contends that § 1-206 (b) (2) confers on it broad discretion. It contends that the statute must be construed to allow it to order prospective relief, because some violations cannot be corrected and the violator must face some consequences for its actions. As an example, the commission cites instances in which a public agency has violated the dictate that it must provide public records "promptly." General Statutes § 1-212 (a). The commission asserts that, in many such cases, prospective relief is "a more appropriate method of rectifying the wrong than the issuance of a civil penalty." We agree with the plaintiff to the extent that the act does not authorize the commission to impose an obligation that the act itself does not demand and that bears no direct remedial effect on the violation established by the complaint.

To "rectify" simply means to "make or set right" or "remedy." Webster's Third New International Dictionary (1993); Random House Dictionary of the English Language (2d Ed. 1987). The "denial" in § 1-206 (b) (2) appears to refer to the particular refusal of the public agency or official to afford a member, or members, of the public a right conferred under the act. Therefore, the phrase "rectify the denial" in § 1-206 (b) (2) would appear to mean corrective measures to make right a past wrong. Indeed, such an interpretation is consistent with the expressly authorized remedies in § 1-206 (b)

(2)—namely, to "declare null and void any action taken at any meeting which a person was denied the right to attend" and to "require the production or copying of any public record." Although § 1-206 (b) (2) imposes a clear limitation on the relief to the extent that it must accomplish this purpose, it does not expressly address the type of prospective relief ordered in the present case. Indeed, whether any particular remedy is tailored to rectify the denial of a right under the act necessarily will turn on the nature of the violation, including whether the complaint involves a discrete or continuous violation of rights under the act. Therefore, we turn to the specific rights found by the commission to have been violated.

The commission's decisions cited as the denied rights to be rectified: "the public's right to attend the [September 13, 2004, December 13, 2004, January 10, 2005, or February 28, 2005 meetings] . . . and . . . the public's right to have the [plaintiff] comply with an order of the [c]ommission to create minutes of executive sessions or other closed meetings of the [plaintiff] . . . ." It is clear, however, that recording future executive sessions would not rectify the exclusion of the complainants, or the public, from the four closed meetings. Nor would such future recordings rectify the plaintiff's failure to provide sufficiently detailed minutes of the meetings from which the complainants were excluded, the provision of which was intended to rectify that exclusion. With respect to the commission's right to obtain compliance with its orders, as the Appellate Court recently noted, "the legal right at issue in any given complaint to the commission belongs to the complainant, not the commission. It is the complainant's interest that the commission is tasked with vindicating, not its own." *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

Thus, we are left with the question of whether the act authorizes the commission to order the plaintiff to record future executive sessions because the plaintiff possibly may, in the future, improperly consider matters in executive or closed sessions that should have been considered in public meetings and the commission may want to use those recordings to ensure that a public record can be made available, if necessary. We conclude that it does not.

The legislature has provided specific sanctions in the act to deter future violations. As previously noted, an unreasonable denial of a right under the act exposes a public official to civil penalties. General Statutes § 1-206 (b) (2). A public official's failure to comply with an order from the commission exposes the official to potential criminal sanctions. General Statutes § 1-240 (b) ("[a]ny member of any public agency who fails to comply with an order of the . . . [c]ommission shall be guilty of a class B misdemeanor and each occurrence of failure to comply with such order shall constitute a separate offense"). Although the commission chose not to pursue either of these sanctions,[6] their availability undermines the commission's contention that the authority to issue relief that bears no connection to remedying a past violation of the act is either authorized by § 1-206 (b) (2) or as a necessary implication of the authority conferred on the commission by the act.

Nor does the genealogy and legislative history of § 1-206 (b) (2) suggest that the legislature intended to confer such sweeping authority on the commission. The language at issue in the present case was adopted in 1977. Public Acts 1977, No. 77-609, § 6 (P.A. 77-609). Prior to July, 1977, § 1-206 (b), then codified at General

---

[6] Although the complainants requested a civil penalty in the cases involving the December 13, 2004, January 10, 2005, and February 28, 2005 meetings, the commission declined to assess such a penalty because it did not believe such action would lead to compliance with its orders.

Statutes (Rev. to 1977) § 1-21i (b), provided in relevant part: "Any person denied the right to inspect or copy records . . . or wrongfully denied the right to attend any meeting of a public agency may appeal therefrom . . . to the . . . commission . . . . Said commission shall . . . decide the appeal . . . by confirming the action of the agency *or ordering the agency to comply forthwith.* It may, in its sound discretion, declare any or all actions taken at any meeting to which such person was denied the right to attend null and void."[7] (Emphasis added.) An order to comply forthwith, i.e., immediately, or an order declaring an action void would simply compel compliance with a preexisting obligation under the act or render invalid an act not in conformity with those obligations. It reasonably would not encompass authority to issue a mandatory injunction to compel conduct not otherwise required under the act to address a potential future violation of the act.

Significantly, the commission drafted and proposed the amendments to the statute in 1977, which the legislature ultimately adopted as part of P.A. 77-609, § 6. See 20 S. Proc., Pt. 9, 1977 Sess., p. 3478; Conn. Joint Standing Committee Hearings, Government Administration and Policy, Pt. 2, 1977 Sess., pp. 422, 426–27. Public Act 77-609, § 6 (b), amended General Statutes (Rev. to 1977) § 1-21i (b) by adding the following language, indicated in capital letters: "Any person denied the right to inspect or copy records under section 1-19 . . . or wrongfully denied the right to attend any meeting of a public agency *OR DENIED ANY OTHER RIGHT CONFERRED BY SECTIONS 1-15, 1-18a, 1-19 TO 1-19b, INCLUSIVE AND 1-21 TO 1-21k,*[8] *INCLUSIVE* . . . may appeal

---

[7] At that time, like the present, the commission also had the authority to impose a civil penalty, and noncompliance with the commission's orders could be punished as a criminal act. General Statutes (Rev. to 1977) §§ 1-21i (d) and 1-21k (b).

[8] Broadly characterized, these provisions deal with incidental matters necessary to effectuate the essential rights of access to public records and meetings, such as prompt compliance with requests, notice and conduct

therefrom . . . to the . . . commission . . . . Said commission shall . . . decide the appeal . . . by confirming the action of the agency or ordering the agency to comply forthwith *WITH SUCH RELIEF AS THE COMMISSION, IN ITS SOUND DISCRETION, BELIEVES APPROPRIATE TO RECTIFY THE DENIAL OF ANY RIGHT CONFERRED BY SAID SECTIONS. . . . SUCH ORDER MAY DECLARE* any and all actions taken at any meeting to which such person was denied the right to attend null and void *AND MAY REQUIRE THE PRODUCTION OR COPYING OF ANY PUBLIC RECORD.*" (Emphasis added.) In a statement submitted to the legislature, the commission explained that the purpose of the amendments was to "clarify" that there was a right to appeal from a denial of *any* right provided under the act, not just the right to inspect or copy documents or to attend meetings, and that there was a remedy for a violation of any such right. Conn. Joint Standing Committee Hearings, supra, pp. 426–27.[9] There is no suggestion in the commission's explanation that its

requirements for public hearings, and limits on fees to be charged for copying public records.

[9] With respect to the additional grounds for appeal, set forth in lines 371 through 377 of the proposed amendment, the commission explained: "This amendment would clarify the point that a person may appeal to the [c]ommission from not only the denial of the right to inspect or copy records, or from the denial of the right to attend a meeting of a public agency, but also from the denial of any other right conferred by the [act]. We believe that the legislature did not intend to create rights in the [act] and then not provide a remedy. To conclude otherwise would be to render the [c]ommission a paper tiger." Conn. Joint Standing Committee Hearings, supra, p. 426. With respect to its proposed amendment addressing its remedial authority, the commission explained: "This amendment would permit the [c]ommission to order that a public agency comply with such relief as the [c]ommission, in its sound discretion, believes appropriate to rectify the denial of any right conferred by this [a]ct, including the production or copying of any public record. The purpose of this revision is to clarify the powers of the commission in terms of fashioning appropriate relief for the denial of any right conferred by the [act]. *This is in conformity with the proposed amendments included in lines 371–377, and is offered for the same reasons.*" (Emphasis added.) Id., p. 427.

existing remedial authority was inadequate to remedy denials of those rights already enumerated, nor any suggestion that the commission was seeking a significant expansion of that authority to include relief that does not remediate a past violation of a right or rights conferred under the act. Nor is there any such indication in the brief remarks on the floor of the Senate explaining the amendments. See 20 S. Proc., supra, pp. 3477–78.[10]

The commission claims, however, that its authority necessarily must be construed to allow it to order prospective relief that does not directly remedy a past violation because there are cases in which the past injury cannot be rectified, and that there must be meaningful consequences for noncompliance. We disagree. We first point out that the present case is not one in which there were no other methods available to rectify the denial of the complainants' right to attend the meetings at issue. The commission could have declared all actions taken at those meetings null and void and ordered the plaintiff to reconvene those meetings in public. Moreover, the commission could have expedited its resolution of the complaints under § 1-206 (b) (1) of the act, which establishes an expedited process for

---

[10] Senator Audrey P. Beck explained the amendments to General Statutes (Rev. to 1977) § 1-21i (b) as follows: "Expand the grounds for appeal to the commission from denial of the right to inspect or copy records and to attend meetings, to denial of any rights incurred by the statutes pertaining to public meetings and records. Extend the time allowed for filing an appeal to the commission from [fifteen] to [thirty] days. Extend the time limit for a decision by the commission from [fifteen] to [thirty] days after the hearing. Specify that the . . . [c]ommission in ordering compliance may order such relief as it believes appropriate to rectify the denial of the rights, including production or copying of a public record. Require that notice of an appeal be given by leaving a copy of the notice at the office of the commission, rather than at the home of the [c]hairman or [s]ecretary as currently required. Most of the proposals were initiated by the commission enforcing the statute at present, based upon their experience and the belief that this would make it both tighter and more realistic to implement . . . ." 20 S. Proc., supra, pp. 3477–78.

hearing appeals that concern an agency's decision to meet in executive session which undoubtedly would have increased the likelihood that the plaintiff would have been better able to reconstruct detailed minutes of those meetings. Finally, as we previously noted, the legislature has authorized specific sanctions to deter future denials. See General Statutes §§ 1-206 (b) (2) and 1-240 (b).

We are mindful that, for many years, the commission has issued certain types of orders that have prospective effect. Specifically, the commission regularly has ordered agencies or officials "henceforth" to act in strict accordance with the act generally or with a specific provision of the act, and, in connection with such orders, it periodically has ordered officials to attend educational workshops on the act.[11] Although the propriety of such orders is not before us in the present case, we note that they are substantively distinguishable

---

[11] In addition to the commission's own decisions cited in its brief to this court, both this court and the Appellate Court have considered the question of whether an appeal from the commission had been rendered moot when the agency or official had complied with the complainant's request but was subject to an order by the commission requiring the agency or official to comply with the act in the future. See *Director, Retirement & Benefits Services Division* v. *Freedom of Information Commission*, 256 Conn. 764, 769 and n.9, 775 A.2d 981 (2001); *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6, 8–9, 688 A.2d 314 (1997); *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 707 n.3, 663 A.2d 349 (1995); *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 648–49 and n.9, 631 A.2d 252 (1993); *Kelly* v. *Freedom of Information Commission*, 221 Conn. 300, 306, 312–13, 603 A.2d 1131 (1992); *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 647–50, 556 A.2d 1020 (1989); *Zoning Board of Appeals* v. *Freedom of Information Commission*, 198 Conn. 498, 500–502, 503 A.2d 1161 (1986); *Chief of Police* v. *Freedom of Information Commission*, 52 Conn. App. 12, 14–15, 724 A.2d 554 (1999), aff'd, 252 Conn. 377, 746 A.2d 1264 (2000); *Dept. of Public Safety* v. *Freedom of Information Commission*, 51 Conn. App. 100, 102 n.5, 720 A.2d 268 (1998). The courts concluded in each case that the plaintiff was aggrieved by such a prospective order, and that the appeal was not moot, but did not consider whether the commission had authority to issue such orders.

from the orders in the present case. Orders directing an agency or official to comply henceforth with the act do not impose a new legal obligation, but, instead, simply give further effect to the legal obligations already imposed under the act. Moreover, such orders may help to effectuate the sanctions provided for in the act by putting the agency or official on notice that future non-compliance may expose the offending actor to civil or criminal penalties. Similarly, orders requiring public officials to participate in training sessions provide a basis from which the commission can ascertain whether such sanctions are warranted. By contrast, orders requiring the plaintiff to record executive sessions impose an obligation beyond those required under the act, expose the plaintiff to the possibility of criminal sanctions for violating orders that do not rectify the denial of a right under the act and bear no direct connection to the enforcement of sanctions under the act. Indeed, the plaintiff's failure to record an executive session would violate the commission's orders, even if the plaintiff properly conducted the closed session.

The present case does not require us to make any broad pronouncements. Rather, we simply must determine whether the commission has authority to issue the particular orders in the present case, either under the specific terms of the statute or as a matter of a necessary implication of its authority under the act. Because the orders do not "rectify the denial of any right conferred by the . . . [act]"; General Statutes § 1-206 (b) (2); we answer that question in the negative. Accordingly, we conclude that the trial court improperly concluded that the commission had authority under § 1-206 (b) (2) to order the plaintiff to make and to maintain audio recordings of its executive or closed sessions for the next three years.

The judgments are reversed and the cases are remanded with direction to render judgments in favor of the plaintiff.

In this opinion NORCOTT, ZARELLA, EVELEIGH and VERTEFEUILLE, Js., concurred.

PALMER, J., concurring. Because I agree with the plaintiff, the ethics commission of the town of Glastonbury, that the relief ordered in the present case by the named defendant, the freedom of information commission (commission),[1] constituted an abuse of discretion under General Statutes § 1-206 (b) (2), I also agree with the majority that the judgments of the trial court must be reversed. I disagree, however, with the majority's reasoning, namely, that the commission lacks the authority to remediate a violation of the Freedom of Information Act (act), General Statutes § 1-200 et seq., by directing the plaintiff to engage in certain future conduct, namely, recording its executive sessions for the next three years, because I see no reason why the commission is categorically prohibited from imposing such prospective relief. In my view, the majority's conclusion has no support in the language of the act, in its legislative history or in its broad, remedial purpose. On the contrary, prospective relief of the general type imposed in the present case falls comfortably within the broad grant of remedial authority afforded the commission under § 1-206 (b) (2). Nevertheless, I would reverse the trial court's judgments because I believe that the remedy that the commission imposed constituted an abuse of discretion under the facts presented.

I

I turn first to the majority's determination that the act forecloses the commission from imposing any remedy, including the remedy imposed in the present case, that "bears no direct remedial effect on the violation estab-

[1] Karen Emerick, a complainant in the four underlying freedom of information cases, and Dana Evans, a complainant in three of those cases, are also defendants. Emerick and Evans have adopted the brief of the commission.

lished by the complaint" because of its prospective nature. Under General Statutes § 1-206 (b) (2), the commission is authorized to "order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by the . . . [a]ct."[2] Despite this expansive language, the majority concludes that § 1-206 (b) (2) does not vest the commission with authority to order that an agency engage in specified conduct in the future, unless the order "bears [a] direct remedial effect" on the violation, because, in the majority's view, any other order cannot be deemed to "rectify," that is, to make or set right, or remedy,[3] "the denial of [a] right conferred by the . . . [a]ct . . . ." (Citation omitted; internal quotation marks omitted.) Thus, under the majority's analysis, § 1-206 (b) (2) operates as a strict limitation on the commission's authority to issue a remedial order that goes beyond requiring the offending agency to take only those steps necessary to fix or correct the violation at issue. In other words, the majority concludes that the act precludes the commission from imposing any remedy that requires an agency to implement measures that will eliminate or reduce the likelihood of any similar future violations, no matter how likely or flagrant those future violations may be. I disagree with this interpretation of § 1-206 (b) (2).

At the outset, it bears emphasis that "the legislature's use of a broad term in an administrative context, without attempting to define that term, evinces a legislative

---

[2] General Statutes § 1-206 (b) (2) also provides in relevant part: "The commission may declare null and void any action taken at any meeting which a person was denied the right to attend and may require the production or copying of any public record. In addition, upon the finding that a denial of any right created by the . . . [a]ct was without reasonable grounds . . . the commission may, in its discretion, impose . . . a civil penalty of not less than twenty dollars nor more than one thousand dollars. . . ." The commission has not invoked these provisions in the present case.

[3] As the majority states, the term "rectify" is so defined in the dictionary.

judgment that the agency should define the parameters of that term on a case-by-case basis." (Internal quotation marks omitted.) *Celentano* v. *Rocque*, 282 Conn. 645, 653, 923 A.2d 709 (2007); accord *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 398–99, 604 A.2d 351 (1992); cf. *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 580–81, 295 A.2d 526 (1972). As the Appellate Court has explained, the language of § 1-206 (b) (2) authorizing the commission to provide relief that the commission, "in its sound discretion, believes appropriate to rectify the denial of any right conferred by [the act]," constitutes a "broad grant of authority [to the commission] to remedy violations of the disclosure provisions of the [act] . . . ." (Internal quotation marks omitted.) *Horn* v. *Freedom of Information Commission*, 16 Conn. App. 49, 52–53, 547 A.2d 56 (1988). Indeed, it is difficult to imagine a more expansive grant of remedial authority than that conferred on the commission by § 1-206 (b) (2). The majority, however, limits that authority in a way that cannot be reconciled with the exceedingly broad language used by the legislature when it enacted § 1-206 (b) (2). Moreover, "[c]ourts grant an agency particular deference when it has expertise in a given area and a history of determining factual and legal questions similar to those at issue." *Celentano* v. *Rocque*, supra, 653; see also *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 139, 778 A.2d 7 (2001). Of course, the commission regularly has been called on to craft appropriate remedies under § 1-206 (b) (2) since that remedial authority was granted to the commission in 1977; Public Acts 1977, No. 77-609, § 6; just two years after the commission itself came into being with the passage of the act. See Public Acts 1975, No. 75-342, § 15.

The broad language of § 1-206 (b) (2) is fully consistent with "[t]he overarching legislative policy of [the

act, namely] one that favors the open conduct of government and free public access to government records. . . . The sponsors of the [act] understood the legislation to express the people's sovereignty over the agencies which serve them . . . *and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings.*" (Emphasis added; internal quotation marks omitted.) *Board of Selectmen* v. *Freedom of Information Commission,* 294 Conn. 438, 450, 984 A.2d 748 (2010). Because our construction of § 1-206 (b) (2) is guided by these policies, on which the act is founded, that provision must be viewed as affording the commission significant leeway in determining how best to address violations of the act. The majority gives no weight to these important considerations in concluding that § 1-206 (b) (2) prohibits the commission from imposing any prospective remedy unless that remedy is necessary to correct the violation that already has occurred.

The majority acknowledges, as it must, that, "for many years, the commission has issued certain types of orders that have prospective effect." In particular, the commission frequently has mandated that an agency comply, in the future, with the commission's interpretation of what the act requires. The commission also has ordered officials of offending agencies to attend educational workshops on the act. Although observing that "the propriety of such orders is not before [the court] in the present case," the majority attempts to place such orders outside the purview of its holding, asserting that they are "substantively distinguishable from the orders in the present case." Apparently, the majority seeks to distinguish these orders because they obviously provide an effective means for ensuring compliance with the act by agencies that have failed to do so, in some cases repeatedly. See, e.g., *Massaro* v. *Board*

*of Fire Commissioners*, Freedom of Information Commission, Docket No. FIC 1996-76 (August 28, 1996) (directing agency's future compliance with provisions of act as interpreted by commission and ordering that agency members attend workshop on act conducted by commission because of agency's repeated violations of act). Although it is no doubt true that those orders are "substantively distinguishable" in a number of important respects from the remedy imposed in the present case, they cannot be distinguished from the present remedy on the basis that they bear a "direct remedial effect" on the violation. On the contrary, it is readily apparent that neither of these remedies has any "direct remedial effect" on the violation itself. Rather, each such remedy is designed to ensure *future* compliance with the requirements of the act, *just like the remedy that the commission imposed in the present case.*[4]

[4] I note that the majority also seeks to minimize the significance of an order requiring an agency's future adherence to the commission's interpretation of the act by characterizing such an order as one that merely "direct[s] an agency . . . to comply henceforth with the act . . . ." The majority's reasoning is unavailing for at least two reasons. First, because an agency may disagree with the commission's interpretation of the provision of the act at issue, an order directing the agency to adhere to that interpretation at all times in the future can hardly be characterized as minor or insignificant. More to the point, however, it cannot be denied that such an order affects only the future conduct of the agency and, therefore, "bears no direct remedial effect" on the violation.

In addition, the majority states that "orders requiring public officials to participate in training sessions provide a basis from which the commission can ascertain whether . . . sanctions [under the act for future noncompliance with the act] are warranted." To the extent that the majority relies on this assertion to support its contention that such an order somehow falls outside of its holding, I do not follow the majority's reasoning. Section 1-206 (b) (2) is the only authority that the commission has to require officials to attend a training session, and, therefore, any such order necessarily is issued by the commission as a remedial order under that provision. Moreover, the order clearly is prospective and is designed to ensure compliance with the act in the future. Consequently, an order requiring an official to attend a training session is a prospective remedial order issued under § 1-206 (b) (2) that, like an order requiring compliance with the commission's interpretation of the act, has "no direct remedial effect" on the violation. Thus, despite the majority's contrary assertion, such an order is precisely

The majority's unsuccessful attempt to save these two prospective remedies from its construction of § 1-206 (b) (2) as barring any order that "bears no direct remedial effect" on the violation underscores the fundamental flaw in the majority's analysis. Because the remedies of requiring future compliance with the act and attendance at a workshop on the act clearly are beneficial, and because there is nothing in the language or purpose of the act to suggest that these remedies fall outside the authority of the commission, it is apparent why the majority seeks to distinguish them from the category of remedies that the majority concludes are unauthorized under § 1-206 (b) (2). The majority's effort to do so is unavailing, however, because, as I explained, neither the remedy of requiring future compliance with the act nor the remedy of requiring attendance at a workshop on the act reasonably can be deemed to have a "direct remedial effect" on the violation. Yet to avoid prohibiting the use of those prospective remedies in the future, the majority insists that they have such an effect rather than reconsider the logic of its conclusion that only remedies with a direct remedial effect are authorized under § 1-206 (b) (2).

As this court explained some years ago, the act "expresses a strong legislative policy in favor of the open conduct of government and free public access to government records. . . . At the time of its unanimous passage by the General Assembly, the act was noted for making 'sweeping changes' in the existing 'right to know' law so as to 'mark a new era in Connecticut with respect to opening up the doors of city and state government to the people of Connecticut.' 18 S. Proc., Pt. 5, 1975 Sess., p. 2323; 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3907. The general rule under the act is disclosure. . . . As Representative Martin B. Burke, who spon-

the kind of order that the majority has determined the commission lacks the authority to issue.

sored the bill which was enacted, expressly stated on the floor of the house, the intent of the act '[was] to make every public record and every public meeting open to the public at all times with certain specified exclusions.' 18 H.R. Proc., [supra], p. 3907." (Citations omitted.) *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 550, 436 A.2d 266 (1980). In accordance with this view of the purpose, import and reach of the act, the legislature intentionally chose broad and inclusive language in crafting the act's remedial provision, that is, § 1-206 (b) (2), and the majority's cramped interpretation of the provision is manifestly incompatible with that wording. Indeed, the majority's construction thwarts the public policy underlying the act by limiting the remedial authority of the commission in a manner unintended by the legislature. That construction is particularly unfortunate because agencies subject to the act are fully protected from any unreasonable or inappropriate remedial order under the abuse of discretion standard that the legislature itself had chosen to adopt in broadly authorizing the commission to issue any order that the commission, *"in its discretion,* believes appropriate to rectify the denial of any right conferred" by the act. (Emphasis added.) General Statutes § 1-206 (b) (2).

## II

Applying that standard to the orders in the present case, which require that the plaintiff tape-record its executive and closed sessions for a period of three years, I would conclude that the orders were, indeed, an abuse of discretion. The following facts and procedural history are relevant to my conclusion in that regard. As the majority has explained, the town of Glastonbury adopted a code of ethics (code) in July, 2003, and,

pursuant to General Statutes § 7-148h (a),[5] established the plaintiff to investigate complaints alleging violations of the code. Pursuant to General Statutes § 1-82a (a),[6] the plaintiff is required to keep all ethics complaints confidential until it determines that the allegations are supported by probable cause. The plaintiff, which consists of seven volunteer members, was tasked with drafting the rules, procedures and forms necessary to carry out its duties, a process that took more than one year. The four orders at issue in this appeal arose in connection with four unrelated meetings that the plaintiff conducted on September 13, 2004, December 13, 2004, January 10, 2005, and February 28, 2005, from which the public was excluded. All four meetings took place within a six month period preceding or following

[5] General Statutes § 7-148h (a) provides: "Any town, city, district, as defined in section 7-324, or borough may, by charter provision or ordinance, establish a board, commission, council, committee or other agency to investigate allegations of unethical conduct, corrupting influence or illegal activities levied against any official, officer or employee of such town, city, district or borough. The provisions of subsections (a) to (e), inclusive, of section 1-82a shall apply to allegations before any such agency of such conduct, influence or activities, to an investigation of such allegations conducted prior to a probable cause finding, and to a finding of probable cause or no probable cause. Any board, commission, council, committee or other agency established pursuant to this section may issue subpoenas or subpoenas duces tecum, enforceable upon application to the Superior Court, to compel the attendance of persons at hearings and the production of books, documents, records and papers."

[6] General Statutes § 1-82a (a) provides: "Unless a judge trial referee makes a finding of probable cause, a complaint alleging a violation of [the code of ethics for public officials] shall be confidential except upon the request of the respondent. An evaluation of a possible violation of [the code] by the Office of State Ethics prior to the filing of a complaint shall be confidential except upon the request of the subject of the evaluation. If the evaluation is confidential, any information supplied to or received from the Office of State Ethics shall not be disclosed to any third party by a subject of the evaluation, a person contacted for the purpose of obtaining information or by the ethics enforcement officer or staff of the Office of State Ethics. No provision of this subsection shall prevent the Office of State Ethics from reporting the possible commission of a crime to the Chief State's Attorney or other prosecutorial authority."

the plaintiff's adoption of its governing rules and procedures. Following each of the meetings, Karen Emerick, alone or together with Dana Evans, filed a complaint with the commission alleging that the plaintiff had violated the act by conducting the meeting in executive or closed session.

At its September 13, 2004 meeting, the plaintiff went into executive session to consider a complaint filed by Emerick on August 23, 2004, alleging violations of the code by members of the town council. Following its receipt of the complaint, the plaintiff sent Emerick a letter informing her that, under its proposed rules and procedures, which were not yet finalized, it would not receive "[c]omplaints" directly from the public but, rather, would receive "[i]nquiries" from the public that, after an investigation, might or might not result in the filing of a formal complaint. The letter indicated that, for the time being, the plaintiff would treat Emerick's complaint as "correspondence," which it would address at its next meeting. At that meeting, the plaintiff indicated that it had received its first ethics complaint, that the complaint had been filed on an incorrect form and that it was not yet ready to receive or investigate complaints but that it had planned to meet in executive session immediately following the public portion of the meeting to discuss the complaint and to determine what to do with it. The executive session that followed lasted approximately forty minutes, during which the plaintiff discussed the contents of Emerick's complaint but not its merits. The plaintiff otherwise took no action of any kind on the complaint.

On September 15, 2004, the plaintiff sent a letter to Emerick informing her that it had treated her complaint as an "[i]nquiry" for purposes of its September 13, 2004 meeting but that it was not yet prepared to accept such inquiries because its procedures "were still in the process of being refined" and had not yet been approved

by the town's legal counsel. The letter stated that it "looked forward to entertaining [Emerick's] 'request' when presented in the proper form." Thereafter, on November 8, 2004, the plaintiff sent Emerick a "packet of materials" to assist her in submitting her inquiry in the proper form if she remained interested in pursuing her complaint against the town council members. At the December 13, 2004, January 10, 2005, and February 28, 2005 meetings, the plaintiff met in closed session to consider unrelated requests for advisory opinions from two local officials regarding ethics concerns relative to their jobs.[7]

On August 10, 2005, the commission issued its decision concerning the September 13, 2004 executive session, concluding that the plaintiff had violated the act by meeting in executive session to discuss Emerick's complaint because, inter alia, § 1-200 (6)[8] does not per-

[7] At the December 13, 2004 and January 10, 2005 meetings, the plaintiff met in closed session to discuss a request by the probate judge for the Glastonbury probate district for an advisory opinion on whether appearing before town boards and commissions on behalf of clients of his law firm in land use matters would constitute a conflict of interest under the code. At the February 28, 2005 meeting, the plaintiff met in closed session to discuss a request by a member of the board of tax assessment appeals of the town of Glastonbury for an advisory opinion on whether he should disqualify himself from cases involving current or former clients of his real estate business.

[8] General Statutes § 1-200 (6) defines " '[e]xecutive sessions' " as "a meeting of a public agency at which the public is excluded for one or more of the following purposes: (A) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting; (B) strategy and negotiations with respect to pending claims or pending litigation to which the public agency or a member thereof, because of the member's conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (C) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (D) discussion of the selection of a site or the lease, sale or purchase of real estate by a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would cause a likelihood of increased price until such time as all of the property has been acquired or all proceedings or

mit an agency to meet in executive session for such a purpose. In reaching its decision, the commission rejected the plaintiff's contention that the executive session was proper under §§ 1-82a and 7-148h, which require the plaintiff to maintain the confidentiality of its investigations into alleged ethics violations until it determines that there is probable cause to support the allegations. The commission concluded that, because the plaintiff had elected to treat Emerick's complaint as "correspondence" rather than as a complaint, the meeting did not fall within the purview of §§ 1-82a and 7-148h.[9] The commission issued an order requiring the plaintiff, within ninety days, to "cause minutes to be filed of the September 13, 2004 executive session. In preparing such minutes, the [plaintiff] shall ensure that the minutes disclose what transpired in [the] executive session to the same degree as would have been revealed by conducting the session in public."

transactions concerning same have been terminated or abandoned; and (E) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-210."

[9] Specifically, the commission stated: "It is found that §§ 1-82a and 7-148h . . . apply by their express terms only to complaints alleging ethics violations . . . and proceedings conducted prior to a finding of probable cause. In this case, it was the [plaintiff's] own decision to treat [Emerick's] August 23, 2004 letter not as an ethics complaint . . . but as 'other correspondence.' Moreover, regardless of what the [plaintiff] called [Emerick's] August 23, 2004 correspondence, it did not treat it as an ethics complaint, did not discuss the merits of the correspondence, and did not take any actions that might lead to a finding of probable cause." "The [plaintiff] maintains that it [did not] know what to do with the . . . correspondence, [was not] ready to receive it, and convened in executive session to avoid embarrassing a public employee or having allegations aired in public that were ultimately determined to have no substance." "However, it is concluded that the [plaintiff] has not stated a permissible purpose for an executive session . . . and that its closed session did not fall within the provisions of §§ 1-82a and 7-148h . . . . Moreover, the [c]ommission notes that the [plaintiff], as an alternative to discussing [Emerick's] correspondence in . . . executive session, could simply have elected not to discuss it at all."

On December 14, 2005, the commission issued its decisions concerning the December 13, 2004, January 10, 2005, and February 28, 2005 meetings, concluding that the plaintiff had violated the act by meeting in executive session on those days to discuss requests for advisory opinions because, inter alia, § 1-200 (6) does not permit an agency to meet in executive session for that purpose. The commission further concluded that the meetings were improper under §§ 1-82a and 7-148h because discussions relating to requests for advisory opinions do not pertain to the investigation of alleged ethics violations within the meaning of those statutes. The commission again ordered the plaintiff to file minutes of all three meetings disclosing what had transpired in the meetings "to the same degree as would have been revealed by conducting the session[s] in public."

By the time the commission issued its August 10 and December 14, 2005 orders, only two of the plaintiff's original members who were present at the four challenged meetings were still members. After the plaintiff filed amended minutes summarizing its actions at each of the meetings,[10] Emerick, either individually or

---

[10] The amended minutes of the September 13, 2004 meeting provide in relevant part: "Item 11, Executive Session: Consideration of written citizen communication containing potentially confidential information.

"Because the [plaintiff] has no professional staff to screen correspondence, [members of the plaintiff] received and discussed correspondence from a citizen seeking to bring [an] accusation of unethical behavior against certain town officials. Because the [plaintiff] was still refining its procedures and thus not yet prepared to accept formal inquiries, but because the [plaintiff] wished, as a courtesy to the correspondent, to read the correspondence and determine whether there might be any way in which to more immediately address the concerns expressed [therein], [members of the plaintiff] read and briefly discussed the correspondence. [They] came to [an] agreement that the issue raised could only be treated as a formal [i]nquiry and only when the [plaintiff] would be fully equipped to address [i]nquiries. No votes were taken. All conclusions were reached by general agreement, with no objections raised by any [member]."

The amended minutes of the December 13, 2004 meeting provide in relevant part: "[The chairperson of the plaintiff] distributed copies of a request

together with Evans, filed complaints with the commission alleging that the amended minutes were not in compliance with the August 10 and December 14, 2005 orders. Hearings were conducted on these new complaints subsequent to which the commission issued the orders at issue in this appeal. With respect to the amended minutes from the September 13, 2004 executive session, the commission found in relevant part: "For a variety of reasons, the [c]ommission finds that the [a]mended [m]inutes are not consistent with the facts previously found concerning the September 13, 2004 meeting . . . and do not comply with the [c]ommission's order [of August 10, 2005]." "First, it is found that the [September 13, 2004] executive session . . .

for [an] [a]dvisory [o]pinion, which the [members of the plaintiff] agreed to take up at the January [2005] [m]eeting. . . . [The chairperson] suggested that the initial consideration should be whether the [plaintiff] would have jurisdiction to issue an opinion in the particular case. Brief general discussion indicated agreement with the suggestion. No votes were taken. All conclusions were reached by general agreement, with no objections raised by any [member]."

The amended minutes of the January 10, 2005 meeting provide in relevant part: "[Members of the plaintiff] discussed a request for an [a]dvisory [o]pinion from a town official. [They] concluded that the [plaintiff] did not have jurisdiction in the particular case. [One of the plaintiff's members] agreed to write the decision. (Document on file.) No votes were taken. All conclusions were reached by general agreement, with no objections raised by any [member]."

The amended minutes of the February 28, 2005 meeting provide in relevant part: "[Members of the plaintiff] discussed a request from a board member for an [a]dvisory [o]pinion concerning [a] potential conflict of interest between his official duties and his employment. [They] determined that [a] conflict and/or appearance of conflict could arise in specific circumstances and advised that the board member recuse himself from acting if those circumstances should arise. [One of the plaintiff's members] agreed to write the decision. (Document on file.) No votes were taken. All conclusions were reached by general agreement, with no objections raised by any [member]."

The record reflects that, in addition to the amended minutes of the December 13, 2004, January 10, 2005, and February 28, 2005 meetings, the plaintiff also filed copies of the two requests for an advisory opinion that the board had received and discussed at those meetings, together with the plaintiff's decisions with respect to each of those requests.

lasted approximately [forty] minutes . . . but that the [a]mended [m]inutes do not reveal any details consistent with a discussion of that length. While the [a]mended [m]inutes might arguably be a summary of the [forty] minute discussion, they do not disclose what transpired to the same degree as would have been revealed by conducting a [forty] minute session in public." "Further, [at the commission hearing that resulted in the August 10, 2005 order], the [plaintiff] contended that it convened in executive session to avoid embarrassing a public employee or having allegations aired in public that were ultimately determined to have no substance. Since nothing in the amended minutes could conceivably embarrass a public employee, and nothing in the amended minutes airs any allegations in public, it is found that either the [plaintiff] misrepresented its purpose for convening in executive session . . . or it failed to disclose matters discussed in executive session in its [a]mended [m]inutes." "Additionally, at the [commission hearing that resulted in the August 10, 2005 order], the chair[person] of the [plaintiff] testified that the [plaintiff] actually discussed the 'correspondence,' although the discussion was asserted to be different from discussion of the correspondence as an ethics complaint or inquiry. However, it is found that nothing in the [a]mended [m]inutes reflects any details of the discussion of the correspondence, either as an ethics complaint or otherwise, beyond the bald assertion that the correspondence was 'briefly discussed.'" "The [c]ommission does not believe that imposing a civil penalty in this case will cure the memories of the [plaintiff's] members . . . or produce better minutes of the September 13, 2004 executive session." "The [c]ommission does not believe that it would be fruitful to continue to order the [plaintiff] to comply with [the commission's] order [of August 10, 2005], given the apparent resistance of . . . the [plaintiff] to comply, the passage

of time, and the turnover in the [plaintiff's] membership."

The commission therefore ordered that the plaintiff, "[b]eginning [ninety] days following the issuance of [the] final decision, and continuing for a period of three years thereafter . . . make and maintain an electronic audio recording of each of its executive sessions, or any other meeting of the [plaintiff] that is closed to the public. All such audio recordings shall be preserved for the entire [three year] period . . . ." The commission also noted that, "[i]n the event that a complaint is filed alleging a violation by the [plaintiff] of the open meetings provisions of the . . . [a]ct, such recordings shall be made available to the [c]ommission for in camera inspection."

With respect to the amended minutes of the December 13, 2004, January 10, 2005, and February 28, 2005 meetings, the commission found that the plaintiff had failed to comply with the commission's orders directing the plaintiff to cause such minutes to be filed because the amended minutes were not sufficiently detailed with respect to the discussions that occurred at the challenged meetings. The commission ordered the same relief as it had ordered with respect to the amended minutes of the September 13, 2004 meeting.

The plaintiff appealed from the commission's decisions, claiming, inter alia, that the orders directing it to make and maintain audio recordings of its executive and closed sessions for a period of three years exceeded the commission's statutory authority under § 1-206 (b) (2) and were arbitrary, capricious and an abuse of discretion because, inter alia, the evidence and findings of the commission did "not justify the substantial intrusion and prejudice that result from the order[s] . . . ." With respect to the latter claim, the plaintiff contended that two of the commission's stated reasons for concluding

that no other remedy would suffice, namely, the passage of time and the turnover in the plaintiff's membership, clearly were not the product of intentional noncompliance but, rather, were "solely the product of delays in the [commission] process itself." The plaintiff contended that the orders "ignore[d] the presumption that public officials will perform their duties in good faith and in a manner loyal to the public" and would have a "chilling effect" on the plaintiff's work because the plaintiff's members, witnesses and others who appear before the plaintiff may be reluctant to discuss potential ethics violations openly and frankly if they know their statements are being recorded. Finally, the plaintiff contended that the commission's finding that the plaintiff had failed to comply with the commission's August 10 and December 14, 2005 orders was clearly erroneous in view of the reliable, probative and substantial evidence in the record.

In its memorandum of decision dismissing the plaintiff's appeals, the trial court addressed only the plaintiff's claim that the commission had exceeded its remedial authority under the act. After the trial court issued its decision, the plaintiff sought an articulation of the legal and factual bases underlying the trial court's rejection of its other claims, which the trial court denied. The plaintiff subsequently filed with the Appellate Court a motion for review of the trial court's denial of its motion for articulation. The Appellate Court granted the motion and granted the relief requested therein as to two of the requested articulations only, including an articulation of the factual and legal bases of the trial court's conclusion that the plaintiff had failed to comply with the commission's August 10 and December 14, 2005 orders.[11] Thereafter, the trial court

---

[11] The Appellate Court also granted the plaintiff's request for an articulation of the factual and legal bases of the trial court's determination that the August 10 and December 14, 2005 orders were not void for vagueness.

issued an articulation stating that it had upheld the commission's finding that the plaintiff had failed to comply with the orders because the September 13, 2004 executive session had lasted forty minutes but the amended minutes "gave no indication" of the nature and substance of the discussion that had taken place during the meeting.

On appeal, the plaintiff renews all of the claims that it raised in the trial court. In particular, the plaintiff claims that the trial court incorrectly concluded that the commission did not abuse its discretion in ordering the plaintiff to make and maintain audio recordings of its executive and closed sessions for a period of three years. In support of this claim, the plaintiff cites the chilling effect that the orders will have on the plaintiff's ability to engage in confidential communications with its legal counsel, to conduct confidential inquiries into alleged ethics violations, and to engage in confidential communications when in executive session. The plaintiff maintains, moreover, that the orders are "grossly overbroad" in light of the commission's stated reason for issuing them, that is, its concern "that evidence of what transpires in the [plaintiff's] future executive sessions . . . might be similarly forgotten or lost with the passage of time." (Internal quotation marks omitted.) The plaintiff asserts that the commission could have addressed this concern in a manner far less intrusive and prejudicial to the plaintiff by ordering that future complaints against the plaintiff be heard on an expedited basis in accordance with § 1-206 (b) (1).[12]

[12] General Statutes § 1-206 (b) (1) provides in relevant part: "If a notice of appeal concerns an announced agency decision to meet in executive session or an ongoing agency practice of meeting in executive sessions, for a stated purpose, the commission or a member or members of the commission designated by its chairperson shall serve notice upon the parties in accordance with this section and hold a preliminary hearing on the appeal not later than seventy-two hours after receipt of the notice, provided such notice shall be given to the parties at least forty-eight hours prior to such hearing. During such preliminary hearing, the commission shall take evidence and

Finally, the plaintiff contends that the commission's orders were unreasonable and unnecessary in view of the fact that all four of the challenged meetings "occurred over a six month period when [the] relatively new [group] of volunteers [comprising the plaintiff] was trying to figure out how to comply with [the act] as well as its confidentiality obligations under §§ 1-82a and 7-148h." The plaintiff maintains that, once it became aware that it had violated the act by conducting the challenged meetings in executive or closed session, it immediately implemented procedural changes so that similar violations would not recur. For all of the reasons asserted by the plaintiff, I would conclude that the commission's orders in this case constituted an abuse of discretion.

In reaching my conclusion, I am mindful that "[r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) *Dolgner* v. *Alander*, 237 Conn. 272, 280, 676 A.2d 865 (1996). By any measure,

receive testimony from the parties. If after the preliminary hearing the commission finds probable cause to believe that the agency decision or practice is in violation of sections 1-200 and 1-225, the agency shall not meet in executive session for such purpose until the commission decides the appeal. If probable cause is found by the commission, it shall conduct a final hearing on the appeal and render its decision not later than five days after the completion of the preliminary hearing. Such decision shall specify the commission's findings of fact and conclusions of law."

ordering an agency to record its executive sessions is an extraordinary remedy, particularly when, as in the present case, the agency is an ethics commission that, in addition to conducting executive sessions for the purposes enumerated in § 1-200 (6); see footnote 8 of this opinion; is required by law to conduct all of its investigations in closed sessions. See General Statutes § 1-82a (a). In light of the special confidentiality rules pertaining to ethics commissions, one would expect the relief ordered in this case to be reserved for the most egregious violations of the act. Notably, the commission has not cited a single case in which similar relief has been ordered with respect to *any* agency, let alone an ethics commission.

I also agree with the plaintiff that the nature of the violations in this case does not justify the level of intrusion into the plaintiff's privileged communications that necessarily will result from the commission's orders. As the plaintiff contends, all four of the challenged meetings occurred during a six month period in which the plaintiff was still familiarizing itself with the rules governing agencies of its kind and, more importantly, *before* the commission had issued its first ruling in this case alerting the plaintiff to the fact that its practices were not in compliance with the act. As a consequence, the plaintiff never was afforded an opportunity to adjust its practices in light of the commission's ruling so that it might demonstrate both its understanding of the act and its willingness to comply with the act's requirements. In my view, the fact that the orders require the plaintiff to record its executive and closed sessions for a period of three years, *six times longer* than the plaintiff even had been in existence when it committed the violations, simply underscores the unreasonableness of the orders.

In light of my conclusion that the orders constitute an abuse of discretion under all of the relevant circum-

stances, it is unnecessary to address the plaintiff's claim that the trial court incorrectly concluded that the commission's finding that the plaintiff had failed to comply with the August 10 and December 14, 2005 orders was supported by substantial evidence. Nevertheless, my review of the amended minutes that the plaintiff filed in connection with the August 10 and December 14, 2005 orders reinforces my conclusion that the commission acted unreasonably in ordering the plaintiff to record its executive sessions as a remedy for the plaintiff's purported failure to comply with the August 10 and December 14, 2005 orders. Indeed, I am hard pressed to see how the amended minutes did *not* comply with those orders.

With respect to the amended minutes of the September 13, 2004 meeting, the plaintiff contends, and I agree, that the summary of the executive session provided in those minutes; see footnote 10 of this opinion; is all that the plaintiff was permitted to disclose under §§ 1-82a (a) and 7-148h (a). As I previously indicated, the commission found that the summary did not comply with its order of August 10, 2005, because it did not disclose what transpired at the September 13, 2004 executive session to the same degree that it would have disclosed if the meeting had been conducted publicly. In support of this finding, the commission stated that the plaintiff previously had established that it had convened in executive session on that day "to avoid embarrassing a public employee or having allegations aired in public that were ultimately determined to have no substance." The commission further stated, however, that "nothing in the amended minutes could conceivably embarrass a public employee, and nothing in the amended minutes airs any allegations in public . . . ." The commission therefore "found that either the [plaintiff] misrepresented its purpose for convening in execu-

tive session . . . or it failed to disclose matters discussed in executive session in its [a]mended [m]inutes."

Although the commission's findings, which appear to *fault* the plaintiff for failing to disclose the "embarrassing" allegations that it was required by law to keep confidential, are confusing at best, it must be assumed that they are attributable to a misapprehension of the confidentiality requirements of § 1-82a. See footnote 6 of this opinion. In any event, those findings clearly do not support the extraordinary relief that the commission ordered in this case. This also is true of the amended minutes for the December 13, 2004, January 10, 2005 and February 28, 2005 meetings. The summaries of the closed sessions provided in those minutes; see footnote 10 of this opinion; which included the requests for advisory opinions that were discussed during the meetings, the decisions that the plaintiff subsequently issued with respect to the requests and a statement of how each member voted on the requests, were more than adequate to apprise the public of what had transpired at those meetings. As with the amended minutes of the September 13, 2004 meeting, therefore, they, too, provided inadequate justification for the extreme remedy that the commission ordered in this case.

Accordingly, I concur in the result that the majority reaches, namely, its reversal of the trial court's judgments dismissing the plaintiff's appeals.